## In Re B. F. Perry.

*Habeas Corpus — Injunction — Powers of Court Commissioner — Relative Rights of Creditors.*

1. Where one has been imprisoned upon an attachment for a contempt in disobeying an injunctional order, he cannot, on an application for discharge by *habeas corpus*, avail himself of mere irregularities in the proceedings upon which the order was based, but must show *lack of jurisdiction* to make the order.

2. The provisions of sec. 95, ch. 134, R. S., that in proceedings supplementary to execution, "the judge may also, by order, forbid a transfer or other disposition of the property of the judgment debtor, not exempt from execution, or interference therewith," applies to all cases of proceedings supplementary to execution, whether against the judgment debtor or a third person, and *whether a receiver has or has not been appointed.*

In re B. F. Perry.

3. The order of a court commissioner in this case, restraining P. (upon supplementary proceedings against him) from transferring or interfering with his property not exempt by law from execution, was within the jurisdiction of the commissioner, and valid until duly set aside.

4. Whether an affidavit showing the recovery of a judgment against P., the return of an execution thereon unsatisfied, and the residence of P. within the jurisdiction, was sufficient to justify the making of the order, or whether other facts ought to have been stated, is not here decided. If the affidavit was insufficient, that does not affect the commissioner's *jurisdiction.*

5. Before the injunctional order was made, P. had agreed with W., a creditor, that W. should have certain moneys due P. from N. & Co., and that P. should give W. a draft therefor. N. & Co. were notified of this agreement, and in consideration thereof W. delayed to commence an action to foreclose a mortgage upon P.'s homestead, which he held as security for his demand. *Held,*

(1.) That W. being secured by mortgage, his equities as to property not exempt from execution, were inferior to those of general creditors.

(2.) That P.'s equitable claim to have his homestead protected was also inferior to the claim of his creditors (especially judgment creditors) to have all his property not exempt from execution applied to the payment of their demands.

(3.) That therefore the facts above stated as having occurred before the injunctional order was made, did not constitute an equitable appropriation to W. of the moneys due P. from N. & Co.; and the subsequent giving of a draft to W. for said moneys was a disobedience of the order, for which P. was liable to attachment.

6. The existence of the judgment against P., the execution issued thereon, and its return unsatisfied, not being questioned *in this proceeding,* it is unimportant here whether or not they were properly proven before the commissioner, prior to the making of the injunctional order. A failure to prove them would affect only the *regularity* of his action, and not his *jurisdiction.*

PETITION for *Habeas Corpus.*

Petition in this court for *habeas corpus,* writ issued and demurrer to sheriff's return. The facts are fully stated in the opinion.

*Carpenter & Chase,* for petitioner.

*Lewis, McKenney & Tenney, contra.*

LYON, J.   The petitioner, Benjamin F. Perry, is before this court in obedience to a writ of *habeas corpus*, allowed by the. Chief Justice, and duly issued to the sheriff of Dane county, pursuant to the petition of Perry, alleging that he is unlawfully held in custody by said sheriff.  That officer has made due return to the writ, admitting that he holds the petitioner in custody, and setting out his authority therefor.  The petitioner has demurred to such return, and for the purpose of having the whole proceeding disposed of by the decision of the demurrer, a stipulation has been entered into by the parties interested, the effect of which is to amend the return by inserting therein all of the facts essential to a final determination of the right of the petitioner to be discharged from custody.

The facts, as they appear by the return of the sheriff of Dane county, thus amended and enlarged by the stipulation, are as follows:

In November, 1871, Baldwin and Sawyer recovered judgment in the circuit court of Dane county, against the petitioner, for $120.55, upon which judgment execution was afterwards issued to the sheriff of said county, and by him duly returned unsatisfied.  The petitioner was during those proceedings, and still is a resident of Dane county.  After the return of the execution, the plaintiffs therein presented to a court commissioner of said county, an affidavit stating the foregoing facts, and thereupon the commissioner made an order requiring the petitioner to appear before him, at a time therein specified, at his office in the city of Madison, and answer concerning his property.  The order also enjoined and restrained the petitioner, in the mean time and until further order, " from making any transfer or other disposition of his property not exempt by law from execution, or from any interference therewith."  In obedience to the mandate of the order, the petitioner appeared before the commissioner and submitted to an examination, and among other things he there testified, that at the time such order was served on him, A. T. Nichols & Co. were indebted

to him in the sum of about $160, which was the balance unpaid for a stock of goods sold by him to said firm; that at the same time he was indebted to S. P. White in a like sum, which was secured by a mortgage on his, (the petitioner's), homestead; that before service upon him of such order, the petitioner had agreed to pay White the money due from Nichols & Co., and had agreed to give him a draft therefor, in consideration whereof White, (whose demand was due), forebore to commence an action to foreclose his mortgage; that the petitioner had informed Nichols & Co., that he wanted the money due from them for White; and that *after* such order was served upon him, he gave White a draft on Nichols & Co. for such unpaid balance.

Upon the foregoing testimony, proceedings were thereafter had before the commissioner, which resulted in the issuing by him of a warrant of attachment against the petitioner, directing that he be arrested and held to answer for the alleged contempt committed by disobeying the order restraining him from making any transfer or disposition of his property. The petitioner was arrested by the sheriff, and is held in custody, by virtue of such warrant of attachment, which is the imprisonment complained of.

I. The first question to be determined is, whether the petitioner was under any legal obligation to obey the injunction contained in the order made by the commissioner, restraining him from disposing of any of his property not exempt from execution.

If the commissioner had lawful authority to make the order, but there was some irregularity or omission in making the same, not going to the jurisdiction of the commissioner, no advantage can be taken of such irregularity or omission in this proceeding. That can only be done by means of a direct proceeding in the circuit court, founded upon the order, or, perhaps, by a motion before the circuit judge to dissolve the injunction. Here we can only inquire whether the commis-

sioner had jurisdiction to make the order.  R. S., ch. 158, secs. 19 and 20.

These principles are substantially conceded by the learned counsel for the petitioner, but he claims that the commissioner had no power to grant an injunction without the appointment of a receiver; and in as much as no receiver was appointed in this case, that therefore the injunction order is void.  But we do not so construe the statute.  R. S., ch. 134, sec. 95.  The provision is that "the judge may also by order forbid a transfer or other disposition of the property of the judgment debtor, not exempt from execution, or interference therewith."  Although this provision is contained in the section which authorizes the appointment of receivers and prescribes the practice thereupon, yet we have no doubt that such provision was intended to apply to all cases of proceedings supplementary to execution, whether against the judgment debtor or third persons, or whether a receiver has or has not been appointed.  These supplementary proceedings were designed to be a complete, and at the same time a cheap and simple substitute, for the old, cumbrous and tedious creditors bill, but they would be deprived of much of their efficiency if it should be held that the court or officer has no power to restrain the judgment debtor, in the first instance and summarily, from disposing of any property exempt from execution which he may own, but which the execution has failed to reach.  The argument that this summary power might be so exercised as to work great hardship to the debtor, has no force.  He may always relieve himself from any supposed hardship, by paying the judgment against him.  In this way he can always most effectually deprive the court or judge of power to grant an order restraining him from disposing of his property.  The same construction has been given by the courts of New York to a statute precisely like ours.  *Green v. Bullard*, 8 How., Pr. R., 313; *Seeley v. Garrison*, 10 Abb., Pr. R., 460. We think, therefore, that the commissioner had the power to

In re B. F. Perry.

make the order in the first instance, and before the appointment of a receiver.

But it is further claimed that the commissioner could not properly make the order until some facts were made to appear by affidavit or otherwise, showing the necessity therefor. In *Green v. Bullard*, Mr. Justice Willard says: "There should, no doubt be some reason appearing in the affidavit, before the judge should forbid a transfer or other disposition of the property of a judgment debtor." In that case, the affidavit upon which the order was made did show facts which constituted sufficient grounds for granting the same. Hence there seems to be some reason for the criticism of counsel that the above remark of the learned judge is *obiter dictum*. The question there was whether the affidavit was sufficient, and it was held to be so on the ground that "the code is silent as to what facts should be stated, and thus leaves each case to be disposed of by the sound discretion of the judge."

In this case, the order in question is based upon an affidavit showing the recovery of a judgment, the return of an execution thereon, unsatisfied, and the residence of the petitioner. Whether other facts ought to have been stated to justify the commissioner in making the order, or whether the affidavit was sufficient for that purpose, we do not deem it necessary to decide. We are clearly of the opinion that if the affidavit is insufficient for such purpose, that is a mere irregularity, not going to the jurisdiction of the commissioner, and that the effect is not available to the petitioner in this proceeding.

We conclude, therefore, that the order made by the commissioner restraining the petitioner from disposing of his property, not exempt from execution, is a valid order, that he was under a legal obligation to obey the same while it remained in force, and liable to be attached if he failed to do so.

II. But it is claimed that the petitioner did not disobey the order. The argument is that the agreement that White should have the money due to the petitioner from Nichols & Co., that

the petitioner should give White a draft therefor, that in consideration thereof White delayed to commence an action to foreclose his mortgage, and that the petitioner notified Nichols & Co. of such agreement between himself and White, constituted an equitable appropriation of the amount due from Nichols & Co., to the payment of the debt which the petitioner owed White, and that these transactions having preceded the order, the petitioner might legally consummate his agreement with White by giving the draft on Nichols & Co. for the money, after the order was served upon him.

Several cases are cited in support of this position, in all of which, the facts, with a single exception, seem very similar to the facts of this case. But that exception is a most important, indeed a vital one. In all of those cases, the creditors were on an equal footing, and the debtor could gain no advantage by having one creditor paid rather than another. But here, White was secured by a mortgage upon the petitioner's homestead, and the effect of applying the doctrine of equitable appropriation contended for, would be to enable the petitioner to collect a debt due him, which would otherwise have been reached by an unsecured creditor, and to invest the proceeds in a homestead where such creditor cannot reach it. To justify himself in giving the draft after the order was served upon him, thus carrying out his executory agreement with White, the petitioner is compelled to invoke the equity powers of the court in support of his homestead rights. When he does this, he is met by the superior equity of the unsecured creditors, which is, that all of the property and credits of the petitioner, not exempt, should be applied to the payment of their demands. And this, the more especially, where such creditors, as in this case, are judgment creditors and have obtained a valid injunction to prevent a transfer of such property and credits. The same principle was held by this court in *Jones v. Dow*, 18 Wis., 241 ; and in *White v. Polleys*, 20 Id., 503.

White having obtained the draft which entitles him to the

money due from Nichols & Co., has no interest in the question. But had the draft not been given, and had he brought an action to enforce the doctrine of equitable appropriation contended for, he must necessarily have failed, on the authority of the above cases in this court, on the ground that his debt being secured, he must first resort to his security for payment, and so far as appears, that was amply sufficient to pay him. In that way alone could the equities of unsecured judgment creditors, who were seeking to collect their judgments out of other property of the petitioner, be preserved. Thus it is apparent that a principle not involved in the cases cited on behalf of the petitioner, is applicable to the question under consideration, and impels to the conclusion that this is not a case where the doctrine contended for can properly be applied.

It follows that the petitioner disobeyed the order of the commissioner, when he gave White the draft on Nichols & Co., and that he was legally attached for such disobedience.

III.   Some minor objections to the validity of the proceedings before the commissioner, were urged on the argument, one of which, (and the only one that requires to be noticed), was, that the judgment, execution and return, were not proved before the commissioner when the petitioner was examined. However that may be, the existence of that record and of the documents, is admitted in these proceedings, and we are not required to go behind such admission to inquire whether proof of them has always been made at the proper time in the proceedings before the commissioner. There is no force in the objection.

The demurrer to the return must be overruled, and the petitioner remanded to the custody of the sheriff of Dane county.

*By the Court* — So ordered.