In re Milburn: Habeas Corpus.

## In re Milburn: Habeas Corpus.

*November 20 — December 11, 1883.*

Habeas Corpus. (1) Demurrer. (2) What questions raised. Contempt: Constitutional Law. (3) Disobedience of order in supplementary proceedings. (4) Presumptions. (5) Imprisonment for contempt not imprisonment for debt. (6) Who entitled to jail liberties.

1. Where, upon the return to a writ of *habeas corpus*, there is no traverse, but it is insisted that the prisoner should be discharged, this is, in effect, a demurrer, and the return must be treated thereon as a verity.

2. When a prisoner is held by virtue of a legal process of arrest the writ of *habeas corpus* raises only the question of the jurisdiction of the court or officer to issue such process.

3. A judgment debtor who fails to deliver property to a receiver according to an order made in proceedings supplementary to execution, may be punished as for a contempt.

4. Where a party, after being duly notified, fails to show cause why he should not be punished for disobedience of an order of the court, it will be presumed that such order was duly served upon him, and that he had the ability to obey.

5. The statute (R. S., sec. 3037) authorizing the imprisonment, as for a contempt, of a judgment debtor who disobeys an order for the payment or delivery of money or property made in proceedings supplementary to execution, is not in violation of sec. 16, art. I of the constitution, even though the judgment was for a debt founded on a contract.

6. The statute (R. S., sec. 4322) providing that every person who is in custody by virtue of an attachment in proceedings for contempt, issued for nonpayment of any sum of *money* ordered to be paid in a civil action, shall be entitled to be admitted to jail liberties, should be liberally construed. So construed it applies to a person imprisoned for a contempt in disobeying an order requiring the delivery of *negotiable promissory notes* to a receiver in supplementary proceedings.

On the petition of *William Milburn* a writ of *habeas corpus* issued out of this court, returnable November 20, 1883. The writ is directed to Robert Scott, sheriff of the county of La Crosse, in the state of Wisconsin. It appears from the return to the writ, in effect, that the petitioner is restrained of his liberty under and by virtue of a warrant of commitment made May 12, 1883, by Hon. Alfred W. Newman, as judge of the circuit court for Trempealeau county, committing the said petitioner to the common jail of Trempealeau county as for a contempt, and also an order made by the said judge thereon ordering that such sentence and imprisonment be executed in the common jail of La Crosse county, for the reasons therein given. The substance of the warrant is stated in the opinion.

*G. Y. Freeman*, for the petitioner.

For the sheriff there were briefs by *Gregory & Gregory*, and oral argument by *Mr. C. N. Gregory.* They argued, *inter alia*, that the imprisonment was not for debt within the constitutional prohibition. *Steller v. Steller*, 25 Mich.,

159; *Dean v. Smith*, 23 Wis., 483. The court has no power to punish a contempt already committed by an imprisonment of indefinite duration, but it may coerce obedience to any lawful order by imprisoning the contumacious party until he shall comply. *Cromartie v. Bladen Co.*, 85 N. C., 211. The justice or expedience of the order, even its regularity, cannot be questioned in this proceeding. *Ex parte Perkins*, 18 Cal., 60; *People ex rel. v. Sheriff*, 29 Barb., 622; *In re Perry*, 30 Wis., 268; *In re Eldred*, 46 id., 530; 5 Wait's Pr., 535. Jurisdiction is to be intended. If the court might make the order legally under "any supposable state of circumstances, all jurisdictional steps and matters of regularity are to be presumed." *People v. Nevins*, 1 Hill, 154. And jurisdictional facts need not be recited in the process. If there is any defect it must be shown by the party complaining of it. 5 Wait's Pr., 536, and cases cited; *Seaman v. Duryea*, 11 N. Y., 324; 1 Crary's N. Y. Pr., 206; *Davison's Case*, 13 Abb. Pr., 129; R. S., sec. 3427; *In re Kahn*, 19 How. Pr., 475. Although an insolvent debtor committed for contempt in not paying money is discharged by a New York statute on making an assignment, yet this does not apply "where the party is imprisoned for the nonperformance of some act or duty which is in the power of the defendant to perform." 1 Crary's N. Y. Pr., 176, 210; *Van Wezel v. Van Wezel*, 3 Paige, 40. So, our statute granting jail liberties does not apply where the debtor is confined for nonperformance of what is in his power to do. The language of the statute has merely been conformed to the construction given it in *In re Gill*, 20 Wis., 719, unwillingly following New York decisions. See *People ex rel. v. Bennett*, 4 Paige, 282; *Patrick v. Warner*, id., 397. These cases turn upon payment of costs or suit money and not on failure to turn over money or property found actually in the possession of the defendant. They show that in them the prisoners were unable to comply. Our statute, moreover, applies

only to *money* ordered to be paid *in a civil action.* The order in this case required the delivery of *personal property other than money* to a receiver in a *special proceeding* supplementary to execution.

CASSODAY, J.   1. When the prisoner conceives that the return to the writ of *habeas corpus* issued upon his petition does not set forth truly or fully, and at large, the authority and cause of his imprisonment, as required by sec. 3420, R. S., it becomes necessary for him to deny such of the material facts set forth in the return as he deems untrue, and to allege any fact showing, either that his imprisonment or detention is unlawful, or that he is entitled to his discharge; and the issue thus formed by such traverse, verified by the oath of the prisoner, may thereupon be heard, tried, and determined in a summary way, and thus the real facts, and the true cause and authority of such imprisonment, be ascertained.   Sec. 3425, R. S.   In this case no such traverse was made, but it was insisted that the prisoner should be discharged upon the return.   In other words, the prisoner's counsel, in effect, demurred to the return.   Such being the state of the case, the return to the writ must be accepted as a verity.

2. It appears from the return that the prisoner is held by virtue of a legal process, issued by the judge of the circuit court of the sixth judicial circuit.   Such being the nature of the process and authority for the imprisonment, the writ of *habeas corpus* only raises the question of the jurisdiction of that officer to issue the process of arrest.   *In re Eldred,* 46 Wis., 530.   Certainly, the writ does not perform the office of a writ of error or appeal, and cannot be resorted to for the purpose of reviewing and correcting orders and judgments which are erroneous merely.   It deals with more radical defects, which go to the jurisdiction of the court or officer, and which render the proceeding or judgment void.

*Petition of Semler*, 41 Wis., 523; *Petition of Crandall*, 34 Wis., 177.

3. Does the warrant by which the prisoner is held in custody fail to show jurisdiction in the circuit judge to issue it? It appears from the warrant that a receiver had been duly appointed in proceedings supplementary to judgments and executions in the cause of Silas E. Houghton, plaintiff, against *William Milburn* (the petitioner), and Caroline S., his wife, defendants, and that the said defendants had not complied with an order duly made by said circuit judge, February 8, 1883, and an order supplementary thereto made by him, May 8, 1883, for the delivery to said receiver of $170 in money, and two certain promissory notes found in the possession of the petitioner and owned by him February 8, 1883, to be applied towards the satisfaction of the judgments in said cause in the circuit court of Trempealeau county, and also that said defendants had refused to pay, as ordered, the costs of the supplementary proceedings, taxed by said judge at $30. It also appears from the warrant that the petitioner and his wife were duly notified to show cause before said officer, as such judge, May 12, 1883, why they should not be punished for their alleged misconduct in disobeying said orders; and not having shown good cause therefor, or having made any defense to the same, nor complied with the terms of said order, and it appearing that the wife of the petitioner had disclosed no property in her possession or under her control aside from her husband, and the circuit judge having adjudged the said *William Milburn* in contempt for not obeying said orders, and having ordered him to be closely imprisoned till he should deliver over to the receiver the money and two notes and the $30 costs, and the further sum of $30 in the aggregate of costs, disbursements, and expenses of such contempt proceedings, together with the fees of the sheriff taking the petitioner into custody on the warrant, and such costs and expenses as the law pro-

vided for the commitment of the petitioner under the warrant, and it further appearing from the warrant that the petitioner having failed to do any of the acts so ordered, the said warrant was thereupon issued May 12, 1883, and the petitioner taken into custody thereon; and it appeared from the return that since that time he has been held in imprisonment by virtue of the said warrant.

The petitioner, in the supplementary proceedings, having disclosed the fact that he had in his possession the money and notes in question, and the same not being exempt from execution, the judge was expressly authorized by statute to order him to pay over and deliver the same to the receiver to apply towards the satisfaction of the judgment, and to forbid the transfer or other disposition of such property. Secs. 3035, 3036, R. S. The statute also provides that if any party shall disobey an order of the judge duly served, he may be punished by the judge as for a contempt. Sec. 3037, R. S. Here we must assume that the order to pay and deliver over was duly served, and that the petitioner still had the money and notes in his possession, and hence that the disobedience was wilful; for if any of these things were not so, the petitioner should have made it to appear when he was ordered to show cause before the judge, May 12, 1883. But instead of doing so, according to the only record which we have any right to consider, he wholly failed to show any good cause for such disobedience, and made no defense, and furnished no excuse for the non-compliance with that order. The petitioner is in no position to urge that he did show cause, and did make it appear to the judge that he was unable to comply with the order. As already suggested, having failed to traverse the return, and having rested his case upon the recitals in the warrant, he has thereby precluded himself from now urging that any of such recitals are untrue. Besides, the section of the statute authorizing the commitment provides that in all cases of such commit-

ment the person committed may, in case of inability to perform the act required or to endure the imprisonment, be discharged by the judge committing him, or the court in which the judgment was rendered, on such terms as may be just. Sec. 3037, R. S. Had the petitioner shown such inability, he would, we apprehend, have been discharged, as provided in that section, instead of being committed. Thus, it appears from the warrant of commitment that the prisoner is detained in custody for a contempt specially and plainly charged in the commitment of an officer having authority to commit him for the contempt so charged, and hence this court is expressly commanded by the statute to make a final order to remand the prisoner. Sec. 3427, R. S.

4. But the invalidity of these statutes, thus authorizing such imprisonment for such contempts, is strenuously urged by counsel. They are said to be an attempt by the legislature to do by indirection what is expressly forbidden by the constitution in these words: " No person shall be imprisoned for debt arising out of or founded on a contract, expressed or implied." Sec. 16, art. I. It is said that the judgment mentioned was for a debt founded on a contract. That does not expressly appear from the warrant, but we assume it is true. This being so, it is urged that the judgment is a debt arising out of a contract. Being a debt, it is claimed that imprisoning the defendant for refusing to pay over the money and deliver up the notes in his possession to the receiver, as ordered, is to imprison for a debt arising out of contract, within the meaning of the constitutional prohibition. The argument is plausible. But to comprehend the real significance of this constitutional provision regard must be had to the state of the law at the time of its adoption. Such regard being had, it will readily be understood as referring to the seizure of the body of the defendant in execution, and holding him in custody to satisfy the judgment. In the early period of the common law no *capias* issued in

proceedings purely civil.  *Cassidy v. Steuart,* 2 Man. & G.,
463.  In that case TINDAL, C. J., thus stated the origin of
the writ: "Where a *capias ad respondendum* was given by
statute, the courts held that in order to secure to the plaint-
iff the fruits of a judgment obtained in an action com-
menced by *capias ad respondendum,* a writ of *capias ad sat-
isfaciendum* should issue after judgment.  By the statute of
*Marlebridge* a *capias ad respondendum* was given in actions
of account, and the remedy was extended to *other actions* by
subsequent statutes, and, as far as can be ascertained, the
*capias ad satisfaciendum* was awarded by the court in those
cases in which a *capias ad respondendum* was allowed by
statute to issue."  In the cases to which those English
statutes thus extended, it was optional with the plaintiff in
the judgment whether he took a writ for the seizure of the
goods, or a writ for the seizure of the body of the defend-
ant; but if he resorted to the former and seized the goods,
he could not have the latter until the first writ was returned
or returnable.  *Miller v. Parnell,* 6 Taunt., 370; *Wilson v.
Kingston,* 2 Chit., 203.  But it was held otherwise where
the *fi. fa.* had proved ineffectual by reason of the defend-
ant's goods having been already taken into the custody of
the law, and assigned under a bill of sale.  *Dicas v. Warne,*
10 Bing., 341.  And then the discharge of the defendant
from custody under the *ca. sa.* operated in law as an abso-
lute satisfaction of the judgment.  *Cattlin v. Kernot,* 91
Eng. C. L., 796.

Manifestly, it was not the design of the constitutional
provision in question to wholly abolish what was formerly
known as a writ of *capias ad satisfaciendum,* but only to
prohibit its use in a certain class of cases.  The inhibition
was against using it to imprison for debt arising out of or
founded on a contract, expressed or implied.  It simply pro-
hibited what had been a remedy in the collection of debts
arising out of or founded on a contract.  The remedy which

was thus prohibited was well known to have existed in actions at law, in contradistinction to instrumentalities of coercion resorted to in bills and proceedings for relief in chancery. Supplementary proceedings to enforce a judgment are in the same action, but nevertheless are in the nature of the old creditor's bill in chancery. *In re Remington*, 7 Wis., 643; *Graham v. La C. & M. R. R. Co.*, 10 Wis., 459. The mere fact that equitable and legal jurisdiction is now exercised by the same tribunal, does not prevent the court from exercising all the powers that were formerly exercised by a court of chancery, nor the judge from exercising all the powers formerly exercised by the chancellor, except, of course, in so far as such powers have been limited by the constitution or the statute. We do not think, however, that the constitutional provision in question was designed to cripple or take away the ordinary and well-defined powers of the court or judge when exercising equitable jurisdiction. Decrees and orders in equitable suits and proceedings not coming clearly within the prohibition, may still be enforced by coercion. Thus, in a suit between partners to compel the settlement of a partnership account, an arrest of one of the partners upon a writ of *ne exeat*, and restraint of his liberty until he gave bail not to depart from the state, was held by this court not to be imprisonment for debt within the meaning of the prohibition in question, notwithstanding such partnership relation was a matter of contract. *Dean v. Smith*, 23 Wis., 483. So, in *In re Perry*, 30 Wis., 268, the defendant in proceedings supplementary to execution was ordered not to transfer or dispose of his property, but did so in disobedience of the order, and it was held that he was liable to be punished therefor as for a contempt, notwithstanding the judgment was for a "debt" "founded upon a contract." So it has been held by this court, in supplementary proceedings, that the judgment debtor's wife may be required to disclose

whether she has property of the husband under her control, and may be attached as for a contempt for refusing to answer. *Petition of O'Brien*, 24 Wis., 547.

In *State ex rel. Warfield v. Becht*, 23 Minn., 411, the facts were substantially the same as here, and it was held that neither the commitment nor the statute under which it was made were obnoxious to the provision of the constitution of that state which declares that "no person shall be imprisoned for debt in this state." BERRY, J., giving the opinion of the court, said: "It is true that the order relates to the debt evidenced by the judgment against the relator, but this in no way alters the fact that the imprisonment is for contempt, not for the debt. And the contempt does not consist in the relator's neglect or refusal to pay the debt, but in his disobedience of the order directing him to hand over certain property to the receiver. The fact that the property in question is to be handed over for the purpose of being applied to the payment of the judgment, is in no way important. The commitment is, nevertheless, in no proper sense imprisonment for debt." This language is in harmony with our views of the law applicable to the case.

It is claimed by counsel for the prisoner that a different construction to the clause in question is given in a late case in Iowa, which is not cited, and which we are unable to find. The clause in their constitution is somewhat different from ours, and reads as follows: "No person shall be imprisoned for debt in any civil action on mesne or final process, unless in case of fraud," etc. Sec. 19, art. I, Const. of Iowa. In *Ex parte Grace*, 12 Iowa, 213, it was held that imprisoning a defendant in supplementary proceedings, for refusing to deliver up money in his possession as ordered, was not imprisonment for debt within that provision, but that the statute authorizing such punishment was void under other provisions of their constitution. See, also, *Hogue v. Hayes*, 53 Iowa, 377.

' But even if the Iowa court has changed its opinion, still we could not recede from the conviction above indicated. As in a creditor's bill, so in supplementary proceedings, the commencement of them by the service of process or notice operates as an equitable levy, and creates a lien in equity upon the effects of the judgment debtor, and every species of property belonging to him may be reached and applied to the satisfaction of his debts. *Tilford v. Burnham,* 7 Dana (Ky.), 110, 111; *Miller v. Sherry,* 2 Wall., 249; *Edmeston v. Lyde,* 1 Paige, 637; *Beck v. Burdett,* id., 309. The attempt to conceal and keep from the receiver money and choses in action, thus ordered to be delivered up, and upon which the creditor, by such equitable levy, had procured such equitable lien, was not only a fraud upon the rights of the creditor, but a contempt for the authority of the judge. The mere fact that the contempt was in proceedings supplementary to a judgment founded upon a contract, did not make it any the less a contempt, nor prevent its being punished as such. We must, therefore, hold the statutes in question to be valid enactments.

5. The statute provides that every person who shall be in the custody of the sheriff of any county by virtue of an attachment in proceedings for contempt, not criminal, issued for nonpayment of costs, or of any sum of money ordered to be paid in a civil action, shall be entitled to be admitted to such jail liberties upon executing the bond prescribed in the next section. Sec. 4322, R. S. This is not a criminal contempt. It follows, from the language of the statute, that if the petitioner had only been committed for the nonpayment of costs and money ordered to be paid, then that he would without question have been entitled to the jail liberties upon giving the requisite bond. Is he precluded from such liberties merely because the order also covers two promissory notes? The statute was made in the interest of the liberty of the citizen, and hence should be liberally construed. It

was so liberally construed by Judge DIXON in *In re Gill*, 20 Wis., 686. He there extended the rule by construction to a commitment for contempt in refusing to obey an order directing the payment of money, notwithstanding that was not expressly named in the act of 1864 as a ground for admitting the prisoner to the liberties of the jail. Negotiable promissory notes represent money, and to some extent partake of the nature of money; and hence we must, under the liberal rule of construction mentioned, hold that they come within the spirit of that section.

For the reasons given, the prisoner will be remanded to the sheriff of La Crosse county, with direction to admit him to the liberties of the jail upon his giving the bond required by the statute.

*By the Court.*— Ordered accordingly.