Warren and others vs. Rosenberg.

WARREN and others, Respondents, vs. ROSENBERG, imp., Ap-
pellant.

*November 24 — December 15, 1896.*

*Contempt: Refusal of judgment debtor to make discovery of property:
Discretion: Direction to pay over money.*

1. Where the circuit court is satisfied that a proper discovery of the
   property of a judgment debtor is being thwarted by the defend-
   ant's contumacy, it has power to punish him summarily as for a
   contempt committed in the immediate presence of the court, if it
   deems such a course necessary to the proper administration of
   justice and to conserve the power and honor of the court; and its
   action in such a case will not be reversed on appeal except in a
   plain instance of mistake, or abuse of power.
2. *It would seem* that the inaccuracy in denominating as an order the
   verbal directions for the furnishing of a statement of the debtor's
   property, and the committing of the defendant in form until he
   should comply with that order, is not so far of the substance of
   the order of commitment as to require its reversal, where the sub-
   stance of the thing intended is made plain by the proceedings.
3. Although it is within the power of the circuit court to order a
   member of an insolvent partnership to pay over to the receiver
   appointed for such firm a certain sum of money, where the evi-
   dence clearly and satisfactorily shows that such money is within
   his control, and to enforce compliance with the order by imprison-

ing him, yet the exercise of such power is *held* to have been an abuse of discretion, where such partner absolutely denied that he had either property or money belonging to the firm within his power, and the only evidence to the contrary was the inference arising from the fact that about two years previous to such time the firm had been in possession of a large amount of property, the disposition of which had not been satisfactorily accounted for.

APPEAL from orders of the circuit court for Jackson county: W. F. BAILEY, Circuit Judge. *Reversed.*

Appeal from two orders, by the first of which the defendant was adjudged to be in contempt, and directed to be committed until he shall comply with the order of the court. By the other order appealed from, the court refused to discharge him from commitment. These orders were made in an action against the defendant and one Isaac Rosenberg, as copartners, brought under the provisions of section 3029 of the Revised Statutes, for a discovery of the property of the debtor firm. A receiver had been appointed and qualified. The defendant *Ben Rosenberg* had been brought before the circuit court to make discovery of the firm's property, at the instance of the receiver. There had been several partial and unsatisfactory oral examinations, whereby it appeared that the firm had owned and had in its store and business during the then last year goods to the full amount and value of $35,000; and the defendant, who was the active manager of the business, had been able to account for only about $10,000 of that stock. The rest had disappeared, and the defendant professed to be unable to further account for it. After several continuances had been had, and while oral examination was proceeding without profit or enlightenment of the situation, the judge made this remark: "I propose now to let these gentlemen go home, and, with the aid of their counsel and their clerk, have them make out a statement. Their clerk can do it, the one that kept their books, and make out a statement, which they must come in person and verify, as to the amount of goods that was sold to this

man Alec, their brother, as to the consideration for these judgment notes, when the money was borrowed, and where, and so forth; and they must account for at least $15,000 more of this money than they have accounted for now. I will give them a week to do it in. At that time, if they can't give any more satisfactory statement than they have given here, I will have to take hold of the matter." This was not reduced to writing, but was taken by the stenographer. On the day to which adjournment was had for this purpose, February 7, 1895, the defendant appeared in court, with a statement which afforded no new information touching the discovery, and which the court deemed unsatisfactory and not a compliance with his suggestion of what should be required, but which the defendant asserted to be as full and comprehensive as it was within his power to make. The oral examination of the defendant proceeded, without disclosing anything further to the purpose or satisfactory to the court or parties, until the judge remarked: "He has already stated he didn't know where the property was, or what became of it. In fact, he is absolutely ignorant of the entire transaction. It is no use prolonging this thing. He has not complied in giving the statement called for, nor the statement in regard to goods sold to his brother; and I will say here you can draw your order committing him for contempt for refusing to comply with the order of the court. Cut this thing short just where it is."

The court thereupon made an order to commit the defendant for contempt. The order recited the previous proceedings, and the failure to furnish the statement required, and ordered: "It is ordered and adjudged that the said defendant *Ben Rosenberg* be, and he is, in contempt of court in failing and refusing to comply with the orders of the court heretofore made herein; and it is further ordered that said *Ben Rosenberg* be committed to the county jail of the

county of Jackson until he shall comply with the order of the court requiring them to furnish said statement aforesaid, or until the further order of the court." Afterwards, on December 10, 1895, the defendant appeared before the court, and asked to be discharged from the commitment. He produced to the court a new statement, which he claimed to be as full and complete a discovery of the property of the firm and its present condition and situation as it was within his power to make. The court was not satisfied with this discovery. It really made but little, if any, new disclosure. The court considered and found that the defendant "had, and still has, in his possession or under his control, at least ten thousand (10,000) dollars in money realized from the stock of goods heretofore owned by the said defendants, which he refused, and still refuses, to account for or turn over to the receiver," and that the sum due to the creditors who were parties to the action was in excess of that sum, and ordered: "On all the proceedings heretofore had and taken herein, and on the evidence of said defendant *Ben Rosenberg* on the several examinations in the above and foregoing entitled action, and on the written statement made and filed by defendant *Ben Rosenberg* on the hearing of said motion for his discharge from imprisonment, and on the evidence of defendant *Ben Rosenberg*, given in open court on his said application for discharge, it is ordered that the application of the defendant *Ben Rosenberg* for discharge from his imprisonment, under the warrant of contempt issued out of the court on the 7th day of February, 1895, be, and the same hereby is, denied. And it is further ordered that the defendant *Ben Rosenberg* be, and he hereby is, directed and required to pay to and turn over to B. J. Castle, as receiver, the sum of ten thousand (10,000) dollars immediately upon the service upon him of a copy of this order." The appeal is from these orders.

Warren and others vs. Rosenberg.

For the appellant there was a brief by *Geo. M. Popham*, attorney, and *Spooner, Sanborn & Spooner*, of counsel, and oral argument by *A. L. Sanborn*.

For the respondents there was a brief by *C. T. Bundy*, attorney, and *B. J. Castle*, receiver, and oral argument by *Mr. Bundy*.

NEWMAN, J.   Some questions arising in this matter were before this court in *In re Rosenberg*, 90 Wis. 581. That was an application for a writ of *habeas corpus*. It was considered that, on that application, only the jurisdiction of the committing officer to make the order in any supposable circumstances which might arise in the progress of the cause in which it was made could be considered; that the proceedings out of which the order arose, and the regularity of the order itself, could not be adjudged in that proceeding. It was considered that the contempt contemplated by the order of commitment was the contempt of contumacy in refusing to make such full and truthful discovery of the property of the defendants as it was in the power of this defendant to make, by evasion and simulated ignorance; and that the court had power to punish such contumacy, summarily, as a contempt committed in the immediate presence of the court, by commitment until he should make such discovery; and that it was a civil contempt, punishable under ch. 150, R. S.   This seems, upon the whole record, to be the true view of the purport of the proceedings.

The court had made no order that the defendant should make and submit a written statement of the property of the firm.   What the judge said was by way of intimation of the scope and extent to which he deemed that the discovery should be required to reach.   He gave the defendant time to enable him to make such discovery.   He did not reduce his intimation to the form of an order, but left it oral.   It was not an order either in form or intention.   This is clearly

Warren and others vs. Rosenberg.

evidenced by what transpired on the adjourned day. The judge did not at once commit the defendant upon his failure to produce a satisfactory written statement, but proceeded with the attempt to procure discovery by oral examination, until satisfied that further examination would be equally futile, by what he evidently deemed the defendant's persistent evasion and assumed ignorance. Being satisfied that the proper discovery was being thwarted by the defendant's contumacy, rather than by his inability, it was deemed necessary to the proper administration of justice, and to conserve the power and honor of the court, to punish him summarily, as for a contempt committed in the immediate presence of the court. If the court correctly diagnosed the difficulty, the remedy which he applied has the sanction of law. This court would not reverse a proper order in such a case except in a plain instance of mistake or abuse of power.

But in this case it is to be inquired whether the order actually made was justified in the actual circumstance. It seems clear from what has been said that a proper order which should commit the defendant until he should make full and truthful discovery of the property of his firm would not be so clear an abuse of the power of the court as would require its reversal by this court. The order actually made seems to do this. The most serious criticism upon it is that it speaks of the suggestion which the judge made about the furnishing of a statement of the firm's property as an order, and committed the defendant, in form, until he should comply with that order. This is, at least, an infelicitous statement of the real ground of the commitment. But whether this inaccuracy should be deemed to be so far of the substance of the order, where the substance of the thing intended is plain by the proceedings, as to require the reversal of the order on that ground alone, may well be doubted. But that can be no longer a controlling question; for that order has been greatly modified, and, in important particu-

lars, superseded, by the order of December 10, 1895. By that order it is adjudged that the defendant has within his control $10,000 *in money*, of the proceeds of the goods of the defendant firm; and he is required to pay over that sum to the receiver *immediately*. Of course, the order goes upon the theory that his possession of that sum is satisfactorily shown by the examination. So, he is now, inferentially at least, in commitment for not paying over the sum of $10,000, which he has, to the receiver, and until he shall pay over that sum. Of course, the propriety of this order depends upon the fact that the evidence does really establish that the defendant really has such a sum of money actually within his power. If he has money of the firm within his power, it is then within the clear purpose of the law, and of the proceeding, to coerce him to pay it over to the receiver. But, if he has not the money actually within his power, it is signal cruelty to imprison him for not paying the firm's debt. The defendant denies absolutely that he has either property or money of the firm within his power or knowl- edge. There is no direct evidence that his denial is not true. The court's conclusion seems to rest exclusively upon the inference that, because the defendant firm had a large amount of property some two years ago, the defendant has it now. This is hardly a satisfactory basis for so severe a proceeding. The experiences of business men show that such a conclusion is often a very violent *non sequitur* from such premises. The logical consequences of such reasoning will often produce the greatest of injustice. It is not always possible to discriminate justly between the misfortunes of honest enterprise and the feigned disasters of the sharper. It was not the design of sec. 3029 to revive the power and practice of imprisonment for debt. That absurdity has long since been relegated, by the advance of civilization and the melioration of the rigors of ancient remedies, to the limbo of the obsolete barbarisms of the law. Its revival in modern

jurisprudence would be to create an anachronism.   No man
can be imprisoned for mere inability to pay his contract
debts, nor for failing to pay over to a receiver money which
he does not have.   Nor should there be involved in the mod-
ern administration of jurisprudence any considerable peril
of such consequences.   A commitment for failure to pay
over money ordered to be paid should never be made unless·
the evidence shows clearly and satisfactorily that the party
has the money within his power, and so has the present.
ability to comply with the order.   Only so can the liberty
of the citizen be adequately conserved.   This rule cannot be·
unjust to creditors.   It would be a deplorable result to pun--
ish, by too much liberality of surmise, the misfortunes of
the honest but unfortunate debtor.

It is clear that the finding that the defendant has within
his power $10,000 of the firm's funds is largely arbitrary
and conjectural, based mainly on inference and surmise.   It
is supported by no direct, positive proof.   And, judging of
the situation as disclosed, there seems to be a possibility that.
the firm's assets, if, indeed, any of the firm's assets still re-
main, are within the power of others, and not subject to the·
defendant's power; amounting to a probability almost or·
quite as strong as that they are within the defendant's power.
The order of December 10, 1895, should not have been made.
It has no sufficient support in the evidence.   The defendant
had been in jail more than a full year under the first order:
He should have been released.

*By the Court.* — The orders are reversed, and the cause·
remanded with direction to discharge the defendant.

A motion by the respondent to offset the judgment for
costs in this court against the judgment of the circuit court
entered December 11, 1894, was granted May 21, 1896.