O'CONNOR, Respondent, v. O'CONNOR, Appellant.

*No. 219. Argued October 7, 1970.—Decided November 6, 1970.*
(Also reported in 180 N. W. 2d 735.)

536

For the appellant there was a brief by *Pfannerstill, Camp & Tyson* of Wauwatosa, and oral argument by *Richard F. Tyson.*

For the respondent there was a brief by *Barrock & Barrock,* attorneys, and *Maroney & Schiro* of counsel, all of Milwaukee, and oral argument by *Anthony W. Schiro.*

HALLOWS, C. J. The issue presented on this appeal is narrow, namely, whether a husband in a divorce action may be held in contempt of court for failure to pay the allowance made to his wife for her attorneys' fees when the only motion upon which the contempt could be based was made by the attorneys on their own behalf for a

judgment and no notice was given or request made to hold the husband in contempt.

In Wisconsin, as distinguished from some states,[1] a request for an allowance for attorney's fees by a wife in a divorce action is not an independent suit on the theory of necessities furnished to the wife. It has long been held in this state, the enforcement of the duty of the husband to contribute to the wife's costs of maintaining or defending a divorce action, including attorney's fees, is incidental to that action. *Clarke v. Burke* (1886), 65 Wis. 359, 362, 27 N. W. 22. It was therein said the courts of this state have only such powers to require a husband to pay the expenses of prosecution in a divorce action as are given to them by statute. In sec. 247.23, Stats., and its predecessors, the power is granted to the court to order a husband to pay "such sums for the support of the wife and the minor children in her custody and enabling her to carry on or defend the action . . . as in its discretion shall be deemed just and reasonable." In sub. (3), there is a provision that if the action affecting marriage is dismissed or a judgment therefore vacated, "the court shall prior to or in its order render and grant separate judgment in favor of any attorney who has appeared for a party to such action . . . for the amount of fees and disbursements to which such attorney . . . is, in the court's judgment, entitled and against the party responsible therefor." Presumably, as no statute is cited in the motion, it was pursuant to this section that the wife's attorneys made the application, but it would seem such an application was premature and must be conditioned upon an order of dismissal of the action or the vacation of a judgment affecting marriage.

The contempt process, and not a judgment, has from earliest times been used in this state to enforce an order to pay an allowance for attorney's fees. Such payment in this state is not regarded as a debt contracted or created

---

[1] *See* 27A C. J. S., *Divorce*, p. 862, sec. 201.

by the husband but the fulfillment of a duty imposed by the court. The fact the enforcement of the duty calls for the payment of money does not create a debt within the meaning of art. I, sec. 16 of the constitution, forbidding imprisonment for debt. *In re Milburn* (1883), 59 Wis. 24, 17 N. W. 965.

A stipulation by the parties relating to attorney's fees does not change the nature of the duty imposed by the court. Of course, if the stipulation is not presented to the court, any obligation of the husband to pay his wife's attorney's fees thereunder is a contractual duty not involving the discretion of the court and is not subject to enforcement by the contempt process. Where the stipulation is presented to the court, there is a split of authority whether there is still a contract not subject to enforcement by contempt or a decree which is so enforceable. The distinction lies in what the court does with the agreement. As stated in 2 Nelson, *Divorce and Annulment* (2d ed.), Enforcement of Awards, p. 403, sec. 16.08, ". . . if the settlement agreement is complete in itself and merely referred to in the decree or approved by the court, its provisions are not enforceable by contempt; but if it was intended merely by way of recommendation and the decree is the court's adjudication, that adjudication is enforceable the same as if the parties had said nothing about the situation." The latter is the case as here; the decree incorporates verbatim the provisions of the agreement. Thus the agreement is "regarded as merely the recommendation or approval of the parties of an order which the court could have entered in any event without consulting them or having any regard for their wishes." 2 Nelson, *supra,* p. 402, sec. 16.08.

We think it makes no difference to whom the fees are ordered paid because under sec. 247.23, Stats., the payment is to enable the wife "to carry on or defend the action." The allowance is for her benefit.

The constitutional prohibition against imprisonment is for a debt, not any kind of debt, but only such debt as arises out of or is founded upon a contract. Ordering a husband to pay his wife's attorney's fees in a divorce action, even if he stipulated to pay the fees, is not a debt arising out of or founded upon a contract of his. It may be his wife's debt, but it is not his nor does it become his debt. The imprisonment must be for the debt. In *State v. Croy* (1966), 32 Wis. 2d 118, 145 N. W. 2d 118, we held sec. 943.21, Stats. (intentionally absconding without paying a hotel bill) did not violate art. I, sec. 16, Wisconsin Constitution, because that statute punishes fraud by imprisonment although the fraud arises in connection with the nonpayment of a debt.

In respect to alimony, this court said in *Miner v. Miner* (1960), 10 Wis. 2d 438, 443, 103 N. W. 2d 4, "When a court follows and adopts an agreement of the parties making it a part of its judgment, the court does so on its own responsibility, and the provisions become its own judgment." As such judgment, it may be enforced by contempt, and the parties cannot proscribe by agreement its enforcement by contempt.

Generally, the allowance is made to the wife as the statute prescribes, but we note a practice of ordering payment direct to the attorneys. The difficulties this practice creates are exemplified by this case. An attorney should not have a direct interest in a pending suit. He should not be a party to it and an advocate too. It is true, sec. 247.23 (3), Stats., provides the attorney may be protected by a judgment upon proper notice and presumably made a party for that purpose only. But in such a situation there is a reconciliation or the suit is otherwise at an end. *See* 27A C. J. S., *Divorce,* p. 866, sec. 201, for the view a court has inherent power to grant a judgment for attorney's fees when a divorce action is dismissed.

The amount of the allowance for an attorney's fees and in fact whether any such allowance should be made in a divorce case is discretionary with the court. This discretion is expressly given by the language of sec. 247.23, Stats. *King v. King* (1964), 25 Wis. 2d 550, 131 N. W. 2d 357. Under this grant of power, the court can deny an allowance for attorney's fees in one case and grant the wife an allowance sufficient to pay in part or entirely the attorney's fees in another case. Either may be an abuse of discretion in a particular case. In *Spheeris v. Spheeris* (1967), 37 Wis. 2d 497, 155 N. W. 2d 130, this court intimated it would be an abuse of discretion on the facts of that case to require the husband to pay to the wife the total costs of her attorney's fees and disbursements. But this court did not mean thereby that as a matter of law it would be an abuse of discretion in every case for a court to allow the wife the entire cost of her attorney's fees in prosecuting or defending a divorce action. Any such language or inference in *Wahl v. Wahl* (1968), 39 Wis. 2d 510, 526, 159 N. W. 2d 651; *Johnson v. Johnson* (1969), 42 Wis. 2d 237, 244, 166 N. W. 2d 230; *Martin v. Martin* (1970), 46 Wis. 2d 218, 228, 174 N. W. 2d 468; and *Schipper v. Schipper* (1970), 46 Wis. 2d 303, 313, 174 N. W. 2d 474, is withdrawn or overruled. Each allowance must rest on its own facts to meet the standard of the statute of what is just and reasonable. Here, the allowance was a "contribution." For such to be tested as just and reasonable, the trial court would have to know what the total fee agreed upon by the wife and her attorney was. This is not shown in this record.

While the record shows some contempts on the part of Warren O'Connor in the past, it does not show that he was given notice of being tried for contempt at the December 8, 1969, hearing. True, the record shows a failure to pay but it does not show he was able to pay and that

his failure to pay was attributable to him as a fault. It may well be that O'Connor was guilty of wilfully refusing to comply with the court's order and his past record would seem to suggest that he may have been; but a suggestion is not enough even if his contempt was in issue. But here, the motion of the attorneys was not for contempt but to reduce the order to pay to a judgment for their direct benefit. The motion was not the equivalent of a motion to hold the defendant in contempt of court for a contumacious refusal to pay a sum ordered by the court by one who has the ability to make such payment.

It is claimed the misconduct of the defendant in failing to pay the attorneys' fees was committed in the immediate view and presence of the court and could be punished summarily under sec. 295.02, Stats. There is no merit in this argument. The failure to pay did not occur in the presence of the court.

The trial court may have proceeded under sec. 295.03, Stats., which provides, in effect, when an order of the court requires payment of costs or "any other sum of money" in an action for divorce or legal separation, the court may issue a warrant of commitment. *See* sec. 247.30 which provides for enforcement of alimony "or other allowance" under sec. 295.03 or otherwise. However, it has long been settled in Wisconsin that a person cannot be held in contempt of court for the failure to pay money unless the refusal is willful and contemptuous and not a result of his inability to pay. This was so held in a divorce case in which we said, "Imprisonment [on contempt] should not be ordered when it is made to appear that the default is the result of an inability to pay." *Howard v. Howard* (1955), 269 Wis. 334, 337, 69 N. W. 2d 493. *See also: Staples v. Staples* (1894), 87 Wis. 592, 596, 58 N. W. 1036; and *Warren v. Rosenberg* (1896), 94 Wis. 523, 69 N. W. 339. The essential finding in such a contempt must be that the defendant is able to pay or

should be able to pay if he can work and will not and the refusal to pay is willful and with intent to avoid payment. 2 Nelson, *Divorce and Annulment* (2d ed), p. 421, sec. 16.20; *In re Adam's Rib, Inc. (Kaminsky)* (1968), 39 Wis. 2d 741, 159 N. W. 2d 643.

This view is reflected in sec. 295.04, Stats., which provides that a court may, upon being satisfied by affidavit of the commission of misconduct, make an order requiring the accused party to show cause why he should not be punished for alleged misconduct. *See Upper Lakes Shipping v. Seafarers' International Union* (1964), 23 Wis. 2d 494, 128 N. W. 2d 73. The whole purpose of the hearing is to determine the ability to pay and the reason for the failure to pay the amount of money ordered. Due process requires at least a notice and a hearing in the contempt process, whether the proceeding is under statutory authority or is an exercise of the inherent power of the court to enforce its order by an in personam remedy. On this record, the defendant was not given either a notice of or a hearing on the issue the court decided.

The order must be reversed. If the defendant is still allegedly in contempt, a proper petition by the plaintiff Mary Ann O'Connor must be filed and notice given to obtain the contribution to her attorneys' fees by use of the contempt process.

*By the Court.*—Order reversed.

ROBERT W. HANSEN, J. (*concurring*). Here the husband was summarily found to be in contempt of court for failing to pay a contribution to his wife's attorneys' fees as ordered in a judgment of legal separation. He was sentenced to serve six months in jail, subject to payment of a purge.

Anything wrong with that? Yes, answers the majority opinion, reversing and requiring both notice and hearing as prerequisites to a finding of contempt and imposition

of sentence. Anything still wrong? What remains wrong, in this writer's opinion, is that sending this husband to jail for contempt under the circumstances of this case would constitute imprisonment for debt, constitutionally banned.

Art. I, sec. 16, of the Wisconsin Constitution provides:

"**Imprisonment for debt.** SECTION 16. No person shall be imprisoned for debt arising out of or founded on a contract, expressed or implied."

Here the wife retained attorneys to represent her in an action brought by her for legal separation. She thus assumed a debt arising out of and founded on contract. If she failed to pay what she agreed to pay to her attorneys, could she be put in jail for not paying such debt? Clearly not. If the trial court had included in the judgment of legal separation an order that she pay her own attorneys for their services in the case, could she be put in jail for not complying with such court order? I would think not.

Here both husband and wife stipulated and agreed that the husband was to pay $2,000 of the total fee owed to the wife's attorneys under her contract with them. The trial court approved the stipulation of the parties "in its entirety," and, as requested by both parties, provided in the judgment that the husband ". . . shall contribute on account of plaintiff's attorney fees for the use and benefit of Barrock & Barrock, plaintiff's attorneys, the sum of $2,000. . . ." [1] This contribution by the husband was to be paid by November 23, 1965. It was not paid.

On the basis of the husband's agreement with his wife that he would pay $2,000 on the fee owed by her to her attorneys, could he be put in jail for not paying that por-

---

[1] Additionally, a $250 contribution, previously ordered by the family court commissioner, was to be paid by the husband, in the language of the modified, judgment ". . . to George Barrock, plaintiff's attorney, . . ." Disbursements of $350 were also provided.

tion of her debt? Clearly not. When the trial court included in its judgment of legal separation an order that the husband pay what he has agreed to pay, can he subsequently be put in jail for not complying with such order? I would think not. Such order clearly relates to and concerns only a debt, arising out of and founded on a contract. It creates a duty—but only a duty to pay a debt.

In separating duty from debt, the majority opinion locates a ". . . duty of the husband to contribute to the wife's costs of maintaining or defending a divorce action, including attorney's fees, . . ." It is true that when the needs of the wife require and the ability to pay of the husband permit, the family court may order such contribution.[2] Here the court-ordered contribution by the husband did not arise from a finding of need and ability to pay. It arose out of the agreement or stipulation of both parties as to how the amount owed to the wife's attorneys was to be paid or shared between them. The foundation for such stipulation and subsequent court order has to be the contract between the wife and her attorneys, for without a contract, express or implied, there would be no debt or obligation to be shared or contributed to. Ordering the husband to pay a part of the wife's debt to her attorneys does not change the basic nature of the obligation involved any more than ordering him to pay a bill or debt for the wife's purchase of a coat or car would change the debt-founded nature of the obligation arising out of her contract of purchase. The court order shifts the liability for payment, but does not change the origin or nature of the obligation involved. The majority opinion concedes that "It may be his wife's debt," but states, ". . . it is not his or does it become his debt." The writer would hold the ban on imprisonment for debt to include debts incurred by the wife for which the husband is or subsequently (by court order or judg-

---

[2] *Dees v. Dees* (1969), 41 Wis. 2d 435, 164 N. W. 2d 282.

ment) becomes obligated to pay, in whole or part. The duty on the part of the husband is founded upon the debt incurred by his wife which arose out of a contract. The contract need not be one that he signed or agreed to. It is enough that it is a contract which he, initially or subsequently, is held to be obligated to pay, in whole or part.

Seeking authority for the concept that, where duty enters, the element of debt vanishes, the majority cites an 1883 case.[3] However, in that early case, this court cited with approval: " '. . . And the contempt does not consist in the relator's neglect or refusal to pay the debt, but in his disobedience of the order directing him to hand over certain property to the receiver. . . .' " [4] The distinction between paying a debt and handing property over to a receiver is on the microscopic side, but the distinction was made and relied upon in finding imprisonment for debt not to be involved.

More recently, a contempt sentence was appealed to this court, the appellant claiming the sentence constituted imprisonment for debt because it was based ". . . on a failure to make payments to the pension and welfare funds as required by the collective-bargaining agreement, . . ." [5] Noting that the contempt findings also involved noncompliance with a court order for the discharge of a certain person and the turning over of certain records, this court held that: ". . . Even if appellant could not be imprisoned for refusing to contribute to the two funds, he could be for not turning over the records." [6] The spelling out of a constitutionally anti-

---

[3] *In re Milburn* (1883), 59 Wis. 24, 17 N. W. 965, citing *State ex rel. Warfield v. Becht*, 23 Minn. 411. *See also: Wisconsin Employment Relations Board v. Mews* (1965), 29 Wis. 2d 44, 50, 138 N. W. 2d 147.

[4] *In re Milburn, supra,* at page 33.

[5] *Wisconsin Employment Relations Board v. Mews, supra,* at page 49.

[6] *Id.,* at page 49.

septic basis for affirmance would not have been necessary if, indeed, imprisonment for failing to make the court-ordered payment or contribution on a debt arising out of and founded on contract was considered constitutionally permissible.

While the majority opinion does not assert or claim an identical twinship between contributions to attorney's fees and alimony, the differences between the two merit comment. The contribution to the wife's attorney's fees relates solely to a debt owed by her to her attorney. An order for wife or child maintenance rests solely upon marital status and the statutory obligation of marital support. As one court has put it:

". . . Payments which fall into the category of law-imposed alimony or separate maintenance are based upon the statutory obligation of marital support, *may be modified by the court upon a proper showing*, ordinarily terminate with the death of either party, and may properly be held not to constitute a 'debt' within the meaning of the constitutional provision. . . ." [7] (Emphasis supplied.)

The italicized portion in the California opinion correctly stresses the element of modifiability by the court in the light of changed future circumstances as identifying an order based on status, rather than one based on debt. Where an order is based on status, not debt, a change in status warrants, may require, a change in the order. Where the order is based on a debt, arising out of contract, it has no similar inbuilt adaptability to any future changes in status or conditions. Here, as to the contribution to attorney's fees, the order was fixed and final. The trial was over. The services to be performed under the contract of attorney-client had been performed. At the time of the entering of the judgment for legal separation, nothing remained except to determine who

---

[7] *Bradley v. Superior Court* (1957), 48 Cal. 2d 509, 522, 310 Pac. 2d 634, 642.

was to pay the contractual obligation to the wife's attorneys. Future conditions or circumstances would and could not change what was owed to the attorneys, how it was to be paid and by whom. All that was before the court at the time of judgment was who was to pay such debt, clearly a debt arising out of and founded upon a contract. Because the debt involved so arose and was so founded, imprisonment via contempt for even a court-ordered payment of it is imprisonment for debt within the meaning of art. I, sec. 16, Wisconsin Constitution. So the writer concludes that the portion of the judgment ordering the husband to contribute $2,000 "for the use and benefit of plaintiff's counsel" was not enforceable, in the event of default, by contempt and imprisonment.

There remains the issue of whether the portion of the judgment ordering the husband to pay, as he had agreed, $2,000 to the wife's attorneys could, on application of the attorneys to whom the money was to be paid, be converted into a judgment in favor of such attorneys against the husband in the amount of the balance established to be unpaid. This is what the wife's attorneys sought, but did not get. What is here involved is a question of statutory interpretation. The Wisconsin legislature has enacted sub. (3) of sec. 247.23, Stats., providing that, if an action affecting marriage is dismissed or a judgment therefore vacated, ". . . the court shall prior to or in its order render and grant separate judgment in favor of any attorney who has appeared for a party to such action . . . for the amount of fees and disbursements to which such attorney . . . is, in the court's judgment, entitled. . . ." The majority reads the subsection as authorizing a judgment in favor of an attorney for fees and disbursements *only when* the action is dismissed or the judgment vacated. The writer would read it as authorizing a judgment for fees *even when* the action is dismissed by the parties or a judgment vacated

and set aside, thus not barring a judgment where the decree remains in force. Appellant concedes that an attorney to whom money is to be paid under an order contained in a judgment of divorce or legal separation can commence a separate action and secure exactly a judgment based on such order. That is an available alternative, but the writer sees no reason for requiring a separate lawsuit to be started to convert the order into a supplementary judgment in favor of the beneficiary of such order. The only conceivable issue that could be raised at a separate trial would be the amount of the unpaid balance. This hardly requires a new action or different forum. Neither the parties nor the attorney involved are served by requiring a new lawsuit with the inescapable additional investment of time and moneys involved in its being started and processed. Where the validity of the order for contribution is beyond appeal or question, it is most economically and practically reduced to judgment by the court that entered it. Obviously, the right to convert an order into a judgment would be clearer if the trial court here had specifically reserved the right to enter such judgment on proper application in the event of default. For the purpose of this concurring opinion, it is enough to state the writer's conclusion that the wife's attorneys were on the right course when they sought to have the order for fee payment by the husband converted into a judgment. So the writer would exactly reverse the majority's holdings. Where the majority says Yes to the use of contempt, the writer says No. Where the majority says No to entering a judgment, the writer would say Yes. Reversal being required, the shared answer as to that is Yes.