IN RE the SUPPORT OF B., L., T. and K.:

STATE of Wisconsin, Petitioner-Respondent,

v.

Patricia ROSE, Respondent-Appellant.†

Court of Appeals

*No. 91–2669. Oral argument August 6, 1992.—Decided October 7, 1992.*

(Also reported in — N.W.2d —.)

† Petition to review denied.

617

On behalf of the respondent-appellant, there were briefs by *Virginia A. Pomeroy,* assistant state public defender. There was oral argument by *Patricia Riley,* assistant state public defender.

On behalf of the petitioner-respondent, there were briefs and oral argument by *Faye M. Flancher,* Racine County Child Support Agency Attorney.

Before Nettesheim, P.J., Brown and Snyder, JJ.

SNYDER, J.    Patricia Rose appeals from an order which found her in contempt for failing to pay anything toward a previously ordered $55 per week child support order. The trial court also ruled that the three-month jail sentence attendant to the contempt would be stayed if Rose continued to pay the previously ordered amount. In addition, the court imposed a $500 purge condition which Rose does not challenge on appeal.

We affirm the contempt finding. We also conclude that, to some degree, the "stay" is of no legal effect. Under the law of contempt, a purge condition, not a stay, is what keeps a contemnor out of jail. We agree with the trial court that if Rose believes the "stay" (actually the underlying support order) to be error, she should seek to have it changed by the appropriate motion.

The facts are not in dispute. Rose, who evidently is a single parent, has five children, some of whom reside with her mother, Evelyn Capek. This is a voluntary, informal arrangement between Capek and Rose. The number of children in either home varies from time to time. Rose and Capek each receives Aid to Families with Dependent Children (AFDC) for those children in her care.

In 1985, Rose was ordered to pay weekly support of $10 for the two children living with Capek. She made only one payment over the years and an arrearage of over $2400 had accumulated. In May 1991, the Racine County Child Support Agency (the county) filed a petition asking that Rose be ordered to appear and show cause why she should not be held in contempt for failing

to pay the support.[1] The petition was issued on June 3.

Meanwhile, a court commissioner modified the child support order to $55 weekly, effective June 7, because Capek had assumed the care of four of Rose's children.[2] The commissioner also found that the arrearage was over $4800.

The hearing on the contempt petition was held on July 23. Between the time the commissioner modified the support order and the date of the hearing, Rose's gross earned income decreased from $220 weekly to $250 biweekly. The trial court concluded that because Capek received AFDC for Rose's children, Rose was in arrears $2411 to the state and $50 to Racine county. The trial court found that although Rose had earned income in 1990 and 1991, until June 24, 1991, she had paid nothing from that income toward the support of the children

---

[1]In 1985, the county initiated an action which resulted in an order that Rose pay $10 per week child support for the two children then living with Capek. In April 1988, Rose was served with a motion to increase the support because a third child had gone to live with Capek. A series of reviews before the family court commissioner followed. Rose did not appear at the review hearing scheduled for April 26, 1989, and a warrant was authorized for her arrest. She never actually was arrested, however; rather, she appeared as a "walk-in prisoner" before the court commissioner in June 1991, at which time the warrant was vacated.

[2]The court commissioner arrived at the $55 support figure as follows: The child support obligation for five children is 34% of the payer's base. Wis. Adm. Code sec. **HSS 80.03**(1)(e). Rose's base at the time was $220, her weekly gross income. The commissioner took 34% of $220, divided that amount by five (the total number of children) and multiplied by four (the number of children living with Capek). This calculation yields a result of $59.84. The commissioner apparently rounded the number down to $55.

living with her mother.[3] The court thus found that she was in willful noncompliance with the support order and found her in contempt. The court sentenced her to three months in jail with Huber privileges, staying the sentence if she paid the $55 per week ordered by the commissioner. The court also set a $500 purge amount for failure to pay. This appeal followed.

The crux of Rose's argument is that the support order is illegal and that she cannot be found in contempt of an illegal order. Most simply stated, Rose asserts that the order is void because, by the time of the hearing, her earned income had so decreased that if the trial court continued the same support order, she would need to use AFDC to meet it, and AFDC may not be considered when determining ability to pay child support. *See Thibadeau v. Thibadeau,* 150 Wis. 2d 109, 113, 441 N.W.2d 281, 282 (Ct. App. 1989). In more detail, her argument unfolds like this: (1) she would receive a certain AFDC grant if she were not working; (2) if she works, her grant is decreased by the amount of her gross, not net, income less "disregards;"[4] (3) to the extent that her grant is reduced by her gross income less disregards, that amount effectively is equivalent to AFDC because it, plus the grant she still gets, equals the AFDC grant she would get were she not working; (4) thus, under *Thibadeau,* her gross income less disregards may not be considered when determining ability to pay because AFDC is unavailable for child support.

The state responds that Rose properly was found to be in contempt because she willfully disobeyed a support

---

[3]Rose made the ordered support payments between June 24 and July 23, 1991 through wage assignment.

[4]"Disregards" are various allowable expenses, two of which are a $90 work deduction and actual child care costs. *See* Wis. Adm. Code sec. **HSS 201.28**(15)(b).

order. It also asserts that Rose reads *Thibadeau* too broadly because *Thibadeau* does not prohibit requiring a noncustodial parent such as Rose to pay child support out of earned income simply because she also receives a partial AFDC grant.

Rose's contention that the support order is illegal under *Thibadeau* fails. Rose's is not a *Thibadeau* case because she has earned income. Section 49.41, Stats., states that "[a]ll *grants* of [AFDC] . . . are exempt from . . . execution, garnishment, attachment and every other process and shall be inalienable." (Emphasis added.) In *Thibadeau,* this court cited to sec. 49.41 and the Department of Health and Social Services guidelines found in Wis. Adm. Code sec. **HSS 80.03**(1) when we stated: "*Moneys received as AFDC* and child support are excluded from the department's definition of 'gross income adjusted for child support.' . . . *[An AFDC] allotment* cannot be burdened by a child support order." *Thibadeau,* 150 Wis. 2d at 118, 441 N.W.2d at 284–85 (emphasis added). Rose argues that her earned income is tantamount to AFDC. The statutes, the administrative code and the case law eliminate from consideration as income only *actual* AFDC, however. The trial court repeatedly recognized that *Thibadeau* prohibits a support order only against AFDC grants, not against the earned income of one who also receives AFDC. We conclude that the support order is legal.

Accordingly, we turn next to the determination of contempt. A person may be held in contempt if he or she refuses to abide by an order made by a competent court having personal and subject matter jurisdiction. *Wisconsin Employment Relations Bd. v. Milk & Ice Cream Drivers & Dairy Employees Union, Local No. 225,* 238

Wis. 379, 400, 299 N.W. 31, 40-41 (1941), *cert. denied,* 316 U.S. 668 (1942). The person may disagree with the order, but he or she is bound to obey it until relieved therefrom in some legally prescribed way. *See id.* at 400, 299 N.W. at 41.

A finding of contempt rests on the trial court's factual findings regarding the person's ability to pay. *See Balaam v. Balaam,* 52 Wis. 2d 20, 29, 187 N.W.2d 867, 872 (1971). The critical findings are that the defendant is able to pay and the refusal to pay is willful and with intent to avoid payment. *O'Connor v. O'Connor,* 48 Wis. 2d 535, 542-43, 180 N.W.2d 735, 740 (1970). A trial court's findings that a person has committed a contempt of court will not be reversed by a reviewing court unless they are clearly erroneous. *Currie v. Schwalbach,* 139 Wis. 2d 544, 551-52, 407 N.W.2d 862, 865 (1987); *Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983). Because this is a remedial, or civil, contempt, Rose has the burden of showing she is not in contempt. *Balaam,* 52 Wis. 2d at 30, 187 N.W.2d at 872.[5]

Here, the trial court found Rose in contempt because

> [e]arned income, from whatever source is considered part of the financial resources for computing child support. . . . *[S]he has had income* for the last several years *and* until June 24, 1991, *paid nothing* toward the support of the children in the custody of her mother . . . .. *[S]he had income* in 1990 and 1991 prior to June. *She had a support obligation and she paid nothing* from that income toward the support of the children in her mother's care for which her mother

---

[5]The burden is on the state in punitive, or criminal, contempt. *See State v. King,* 82 Wis. 2d 124, 131, 262 N.W.2d 80, 83 (1978).

was receiving AFDC. *I recognize we cannot take the AFDC grant that Patricia gets and compel her to turn that over for support,* but the money she earns at [her current job] or anywhere else is subject to a court order for child support. [Emphasis added.]

Critical to the court's determination is that it did not find Rose in contempt because she failed to pay the full $55 per week, nor did it state or imply that the support order was set at a proper amount. Rather, it held Rose in contempt because "she had income . . . .. She had a support obligation and she paid nothing." The court then strongly urged Rose to seek review of the support order, intimating that the updated numbers might work in her favor. We read in those statements a tacit finding that Rose had the ability to pay *something* toward her obligation and that, had she done so, she would not have been found in contempt. Those findings are not clearly erroneous.

■

We next turn to the stay. This case is a nonsummary remedial contempt proceeding. *See* secs. 785.03(1)(a) and 785.04(1), Stats. The law of nonsummary remedial contempt does not *require* a stay of a sanction. Rather, the law requires an opportunity for the contemnor to purge the sanction. *State ex rel. N.A. v. G.S.,* 156 Wis. 2d 338, 342, 456 N.W.2d 867, 869 (Ct. App. 1990). Nonetheless, the trial court here chose to grant Rose a stay.[6]

Rose complains that the condition of the stay amounts to the trial court's having confirmed the under-

---

[6]Neither Rose nor the state challenges the trial court's use of a stay. While the issue has never been directly addressed in an appellate decision, the use of a stay in a contempt proceeding has been implicitly recognized. *See State ex rel. N.A. v. G.S.,* 156 Wis. 2d 338, 343, 456 N.W.2d 867, 869 (Ct. App. 1990).

lying support order of $55 per week which she claims is invalid under *Thibadeau.* We already have held that this is not a *Thibadeau* case. Thus, even if the $55 per week order is an unreasonable amount, it is not because the order violates *Thibadeau.* Rather, any unreasonableness is because the order may fail to fully reflect Rose's current needs and ability to pay.

Rose's next challenge to the condition of the stay is that the trial court should have reassessed her situation as of the time of the contempt hearing. She points out that the postjudgment support modification occurred when Rose was earning $220 per week and only one of the five children was living with her. By the time of the contempt hearing six weeks later, Rose's income had dropped to $250 biweekly and two of the children resided with her.

A careful reading of the record reveals that Rose misconstrues the trial court's action. The trial court did not unconditionally affirm the underlying order. To the contrary, the court urged her to seek to have the order modified. The court said:

> And then I'll suggest, Patricia, and Ms. Riley cannot represent you as a public defender on this,[7] but I suggest you talk to somebody about coming in and getting this support order modified because it clearly is a disincentive to work. I can't change that order today, but it makes no sense for you to work, have your AFDC grant reduced by the amount you earn and still have to pay $55.00 per week. That makes no sense and I can understand that. But I can change the order only if there is a motion to modify the order . . .. I want you to have the incentive to work. And I

---

[7]A publicly appointed attorney may not represent an indigent party in any proceeding regarding modification of support. *See* sec. 767.52(2), Stats.

will do that by considering a modification of the support order. But until that's done, you've got to pay this or go to jail.

The trial court clearly was troubled by the $55 a week order. The trial court implored Rose to seek a modification of that order. The court even went so far as to decline to impose the punishment resulting from the contempt finding. Instead, it stayed the punishment on the condition that Rose start paying the $55 a week. If she brought a motion to modify the support order and brought that motion to the attention of the trial court, then she would not even have to pay the $55 per week as long as the motion was pending. Only if she did neither of the above would the punishment be imposed. As to that punishment, the trial court set a purge of $500.

We conclude that the trial court proceeded appropriately in this contempt matter. The law of contempt requires no more.

*By the Court.*—Order affirmed.