COURT OF APPEALS
DECISION
DATED AND FILED

May 13, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1793**

Cir. Ct. No. **2016FA752**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

IN RE THE FINDING OF CONTEMPT IN:

TATIANA S. LAITER,

PETITIONER-RESPONDENT,

V.

MICHAEL LYUBCHENKO,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Dane County: RHONDA L. LANFORD, Judge. *Affirmed*.

¶1      NASHOLD, J.[1]  Michael Lyubchenko appeals a June 2019 order finding him in contempt for failure to follow a February 2018 order that required him to amend his 2015 income tax filings and file a joint 2015 tax return with his former spouse, Tatiana Laiter, and share equally with Laiter any refund, liability, and costs to prepare the taxes.  Lyubchenko argues that the circuit court erred by: (1) ordering him to pay Laiter half of her 2015 individual tax liability; (2) "using wrong numbers in calculating Laiter's 2015 tax payments"; (3) "ordering Lyubchenko to pay one half of Laiter's self-employment taxes and failing to take into account [the] parties' [full] joint liability in 2015"; (4) not equally dividing a 2015 Wisconsin tax refund; (5) ordering Lyubchenko to pay Laiter's accountant tax preparation fees; (6) "imposing remedial sanctions on Lyubchenko when he was not in continuing contempt on an already moot issue"; and (7) determining the amount of Laiter's attorney and accountant fees.  I reject Lyubchenko's arguments and affirm the circuit court's contempt order.

## BACKGROUND

¶2      Michael Lyubchenko and Tatiana Laiter were married in 1998.  While the parties were still married, Lyubchenko filed a 2015 individual federal tax return taking for himself deductions and credits to which the parties were both entitled, including claiming the parties' two children and claiming Laiter's father as a dependent.  This resulted in Lyubchenko receiving a $17 federal tax refund.

¶3      As a result of Lyubchenko filing an individual return, Laiter filed her own individual return, resulting in her having to pay a total of $9,911.97 in total

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(h) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

tax liability, an amount that would have been lower had the parties filed a joint return. Laiter filed for divorce on April 20, 2016.

¶4 In August 2017, a contested divorce hearing was held. One of the issues addressed at the hearing was the 2015 tax liability Laiter incurred as a result of Lyubchenko filing an individual tax return and taking for himself the available joint credits and deductions. On February 5, 2018, the circuit court entered a Final Decision and Order resolving "all remaining issues between the parties." A section of the order captioned "2015-2016 Taxes" provided the following:

> [Lyubchenko] filed 2015 taxes claiming both children and leaving [Laiter] with a tax liability. [Lyubchenko] is ordered to amend the 2015 taxes and file jointly with [Laiter]. Any refund/liability shall be shared equally by the parties. Any cost to prepare the taxes will be shared equally.

¶5 On February 26, 2018, Lyubchenko filed a motion to reconsider the February 2018 order. Lyubchenko's motion to reconsider did not challenge the circuit court's order pertaining to the 2015-2016 taxes. Moreover, Lyubchenko acknowledges in his appellant's brief that "after careful consideration" he "decide[d] not to appeal this particular ruling." Lyubchenko's motion to reconsider was denied.

¶6 On May 23, 2018, the circuit court filed its Findings of Fact, Conclusions of Law, and Judgment of Divorce. As with the February 2018 order, the May 2018 divorce judgment contained the following provision:

> [Lyubchenko] shall amend the 2015 taxes and file jointly with [Laiter]. Any refund or liability shall be shared equally by the parties. Any cost to prepare the taxes will be shared equally.

¶7 Lyubchenko appealed the May 2018 divorce judgment but did not raise any issues in his appeal pertaining to the circuit court's 2015 tax decision. This court issued an opinion in that appeal in November 2019. *See* **Laiter v. Lyubchenko**, No. 2018AP624, unpublished slip op. (WI App Nov. 7, 2019).[2]

¶8 After the February 2018 order was filed, Laiter had difficulty getting Lyubchenko to file or sign an amended return. On January 3, 2019, Laiter filed a contempt action and shortly thereafter, Lyubchenko signed an amended 2015 joint tax return prepared by Laiter's accountant, Judith Bacha.

¶9 In March 2019, a contempt hearing was held before a circuit court commissioner, at which Lyubchenko was represented by counsel. Following the hearing, the court commissioner found Lyubchenko in contempt for his failure to sign the amended return as ordered. The court commissioner also found that Laiter had paid $9,911.97 in individual tax liability for 2015, and ordered Lyubchenko to reimburse her $4,955.99 for his half of that amount. The court commissioner also determined that Laiter incurred $1,500 in reasonable attorney fees for having to bring the contempt action and ordered Lyubchenko to pay Laiter's attorney fees, along with $355.50 for his half of the accounting fees incurred for Bacha's tax return preparation.

---

[2] This court's opinion noted that Lyubchenko purported to appeal the circuit court's February 2018 order and the denial of his motion for reconsideration but that his appeal was premature in light of the circuit court's subsequent May 2018 divorce judgment. *See* **Laiter v. Lyubchenko**, No. 2018AP624, unpublished slip op. (WI App Nov. 7, 2019). This court applied WIS. STAT. § 808.04(8) (2017-18) to preserve jurisdiction over the May 2018 divorce judgment. *Id.*, ¶3 n.1. Lyubchenko also appealed from a circuit court order entered on February 10, 2020, and this court issued an opinion in that case affirming the circuit court' order. *See* **Laiter v. Lyubchenko**, No. 2020AP730, unpublished slip op. (WI App Mar. 18, 2021). Thus, this opinion is the third issued by this court in response to Lyubchenko's appeals stemming from the parties' divorce.

4

¶10    Lyubchenko, through his attorney, requested de novo review. At the commencement of the May 2019 de novo hearing, the circuit court allowed Lyubchenko's attorney to withdraw. Both Laiter and Lyubchenko testified at the de novo hearing, as did Bacha.

¶11    Following the hearing, the circuit court issued an order on June 13, 2019, finding Lyubchenko in contempt for his "willful and unreasonable" failure to file or sign a 2015 joint tax return. The court held open sanctions, stating that sanctions would not be imposed if Lyubchenko complied with the court's order to: pay half of Laiter's $9,911.97 liability for her 2015 individual taxes; pay half of the accountant fees for preparation of the 2015 taxes; and pay Laiter's attorney fees.

¶12    Additional background will be provided as necessary in the discussion below.

### DISCUSSION

¶13    A circuit court's use of its contempt power is reviewed on appeal for an erroneous exercise of discretion. *Krieman v. Goldberg*, 214 Wis. 2d 163, 169, 571 N.W.2d 425 (Ct. App. 1997). A circuit court's findings of fact underlying a contempt determination will not be set aside unless they are clearly erroneous. *Id.* Because this case involves remedial, or civil, contempt, Lyubchenko has the burden of showing he is not in contempt. *See State v. Rose*, 171 Wis. 2d 617, 623, 492 N.W.2d 350 (Ct. App. 1992).

### I. Reimbursement for half of Laiter's 2015 individual tax liability.

¶14    Lyubchenko argues that the circuit court erred in ordering him to reimburse Laiter for half of the $9,911.97 in 2015 tax payments that she paid. He

contends that the court's May 2018 divorce judgment directed him to either amend his 2015 taxes and re-file jointly with Laiter *or* to reimburse Laiter, but did not require him to do both. Thus, according to Lyubchenko, the court's June 2019 order requiring him to both re-file his 2015 tax return and reimburse Laiter contradicted the May 2018 divorce judgment, contrary to the doctrines of issue and claim preclusion. Lyubchenko is incorrect.

¶15    A court interprets a judgment in the same manner as it does other written instruments. *Jacobson v. Jacobson*, 177 Wis. 2d 539, 546, 502 N.W.2d 869 (Ct. App. 1993). Where language is plain and unambiguous, effect is to be given to the plain and unambiguous language as written. *Topolski v. Topolski*, 2011 WI 59, ¶33, 335 Wis. 2d 327, 802 N.W.2d 482. Ambiguity exists when the language of the written instrument is subject to two or more reasonable interpretations. *Schultz v. Schultz*, 194 Wis. 2d 799, 805-806, 535 N.W.2d 116 (Ct. App. 1995). Whether a judgment is ambiguous is a question of law to which this court owes no deference. *Id.* at 805. Where a judgment or other order is ambiguous, deference is given to the circuit court's reasonable interpretation of its own prior order. *See id.* at 808-09.

¶16    The circuit court's February 2018 order provides: "[Lyubchenko] is ordered to amend the 2015 taxes and file jointly with [Laiter]. Any refund/liability shall be shared equally by the parties. Any cost to prepare the taxes will be shared equally." The court's May 2018 judgment of divorce likewise states: "[Lyubchenko] shall amend the 2015 taxes and file jointly with [Laiter]. Any refund or liability shall be shared equally by the parties. Any cost to prepare the taxes will be shared equally." These orders are not ambiguous; however, even if they were, deference would be accorded the circuit court's interpretation of its own order. *See Schultz*, 194 Wis. 2d at 808-09. As the circuit court concluded,

these orders require Lyubchenko to not only amend his 2015 taxes and file jointly with Laiter, but also to share any refund or liability equally. It is undisputed that, because Lyubchenko filed his 2015 taxes individually while the parties were still married and claimed for himself credits and deductions—including those for the parties' children and Laiter's father—Laiter also filed an individual tax return. As a result, she incurred a tax liability in the amount of $9,911.97. Under both the February 2018 order and the May 2018 divorce judgment, this amount constitutes a "liability" that is required to be shared by the parties.[3]

¶17    In sum, Lyubchenko has not shown that the court erroneously exercised its discretion in ordering Lyubchenko to pay half of Laiter's $9,911.97 tax liability.[4]

**II. The circuit court's calculation of Laiter's 2015 tax liability.**

¶18    As stated, the circuit court found that the amount of 2015 tax liability that Laiter paid was $9,911.97. This amount was based on the expert testimony of Laiter's accountant, Bacha, and an exhibit that Bacha prepared.

---

[3] Notwithstanding Lyubchenko's suggestions to the contrary, the anticipated refund for the parties' joint return, which at the time of the May 2019 de novo hearing on Laiter's contempt motion was anticipated to be $3,030, was also to be divided equally. However, the circuit court granted Laiter's request that Lyubchenko's share of the refund go to Laiter to offset his half of the $9,911.97.

[4] Laiter contends that, in making his argument regarding payment of Laiter's 2015 tax liability, Lyubchenko refers to various IRS documents, bank records and tax returns, none of which he produced during the de novo contempt hearing or before the circuit court commissioner prior to the de novo hearing. In addition, Laiter states that, with respect to the October 2019 and December 2019 Internal Revenue Service (IRS) documents to which Lyubchenko refers, the circuit court specifically *denied* Lyubchenko's motion to supplement the appellate record with these documents, concluding that his attempt to do so was frivolous. In view of my rejection of Lyubchenko's argument on other grounds, I need not consider Laiter's additional contentions.

¶19    Lyubchenko argues that the circuit court "made a mistake of fact" in accepting the $9,911.97 figure. He argues that the figure should actually be $8,323.

¶20    As stated, a circuit court's findings of fact underlying a contempt determination will be upheld unless they are clearly erroneous. *Krieman*, 214 Wis. 2d at 169. A circuit court's decision is not clearly erroneous when it logically interprets the facts, applies a proper legal standard, and reaches a reasonable conclusion using a demonstrated rational process. *Benn v. Benn*, 230 Wis. 2d 301, 308, 602 N.W.2d 65 (Ct. App. 1999). On appeal, a reviewing court will not reweigh evidence or reassess witness credibility. *Dickman v. Vollmer*, 2007 WI App 141, ¶14, 303 Wis. 2d 241, 736 N.W.2d 202.

¶21    At the de novo hearing, Bacha testified as to how the $9,911.97 figure was derived, relying on a supporting exhibit. Lyubchenko did not object to the exhibit, nor did he present testimony from an accountant or other expert witness to refute the $9,911.97 amount.

¶22    Lyubchenko makes several assertions as to why the $9,911.97 figure was in error: namely, that Laiter's exhibit in support of the figure did not provide a source for the figure; that a motion to reconsider that he filed showed that "3 out of 4 numbers on that list do not match [Laiter's] own tax returns and the actual tax liability was $1,600 less"; that the circuit court "included penalties and interest into Laiter's tax liability without giving any explanation" but that "IRS does not consider penalties and interest tax liability, and calculates them in their own way different from the taxpayer"; that "the decision not to pay her tax bill on time was entirely Laiter's"; and that Laiter's liability consisted primarily of self-employment taxes "that are her own sole responsibility."

¶23     Because Laiter's arguments are not developed or supported by any legal authority, they need not be considered on appeal. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments); *Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("[a]rguments unsupported by legal authority will not be considered, and we will not abandon our neutrality to develop arguments" (citations omitted)).  Moreover, with the exception of the self-employment tax issue discussed in the next section below, the challenges Lyubchenko raises were not raised during the hearing and are therefore forfeited on appeal. *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177 (issues not raised in the circuit court are forfeited and appellate courts generally do not address forfeited issues). This includes the allegation Lyubchenko raised in his motion to reconsider that there were discrepancies between the hearing exhibit and Laiter's tax return.  To raise this issue on appeal, Lyubchenko was required to raise it at the hearing so that Laiter, her expert, and the circuit court would have an opportunity to address it during the hearing.  This is particularly true here, where the $9,911.97 figure presented at the de novo hearing was the same amount that was presented before the court commissioner at the initial contempt hearing and the same figure set forth in the court commissioner's order.  Thus, Lyubchenko had more than two months prior to the de novo hearing to prepare a challenge to this figure, assuming one existed.

¶24     Based on the foregoing, I reject Lyubchenko's argument that the circuit court erroneously exercised its discretion in finding that Laiter's 2015 tax liability was $9,911.97.

9

### III. Lyubchenko's argument that the circuit court erred in ordering him to "pay one half of Laiter's self-employment taxes and failing to take into account [the] parties' [full] joint liability in 2015."

¶25     Lyubchenko asserts that Laiter's 2015 federal tax return indicates that the largest portion of her $9,911.97 tax liability was for self-employment taxes, specifically, Social Security and Medicare taxes, which she had to pay as a self-employed individual.  Lyubchenko states that both Social Security and Medicare "are two insurance programs run by the [f]ederal government and their distributions fall under federal and not state jurisdiction," that "if distributions from a program are subject to federal jurisdiction, the contributions would fall under the same jurisdiction," and that the "state court lacks jurisdiction to order Lyubchenko to pay Laiter's self-employment taxes."  In support, he cites *Mack v. Mack*, 108 Wis. 2d 604, 323 N.W.2d 153 (Ct. App. 1982), but he fails to provide a quote, pincite or proposition of law from this case, nor any analysis of it.  *Mack* does not support the argument that Lyubchenko appears to be making—i.e., that the circuit court lacked jurisdiction to consider whether self-employment taxes may constitute marital debt.  Nor does he provide any authority for any assertion that self-employment taxes incurred during a marriage may not be considered a marital debt.  Therefore, I need not consider these unsupported arguments.  *See Industrial Risk Insurers*, 318 Wis. 2d 148, ¶25.

¶26     However, I also note that Lyubchenko has not shown that the circuit court erred in rejecting Lyubchenko's argument that the bulk of the $9,911.97 tax liability was Laiter's responsibility to pay.  The court explained:

> Mr. Lyubchenko had the right, if he wished, to call an expert. He cannot sit on the stand and try to explain complex tax issues as he does not have the foundation to do that. I am not a tax expert and I certainly will not take Mr. Lyubchenko at his word as to what he understands the

> tax laws to be when we have an accountant who has prepared the taxes here as an expert testifying.
>
> So to that end, I am going to accept the proposition that there are -- there's a tax liability that Mr. Lyubchenko owes to Ms. Laiter.

I cannot conclude that the court's determination was clearly erroneous.

¶27 Lyubchenko also argues that the circuit court "failed to explain why Lyubchenko has to pay not only his Social Security, Medicare and income taxes and all parties' school and property taxes on the parties' joint residence in New York, but also pay Laiter's self-employment, her business taxes and both federal and Wisconsin income taxes." Even assuming Lyubchenko's characterizations of the parties' respective obligations are accurate, such assertions are challenges to the court's original division of property during the divorce proceedings and are not the proper subject of this appeal of the court's June 2019 contempt order.

¶28 In sum, Lyubchenko has not demonstrated that the circuit court erroneously exercised its discretion in determining that Lyubchenko should pay half of Laiter's 2015 individual tax liability.

**IV. 2015 Wisconsin tax refund.**

¶29 Lyubchenko argues that the May 2018 divorce judgment requires not only that the 2015 federal tax refund be shared equally, but that any 2015 Wisconsin tax refund be shared equally as well. He therefore contends that the circuit court erred in awarding Laiter the 2015 Wisconsin refund in its June 2019 contempt order. As previously stated, the May 2018 divorce judgment states: "[Lyubchenko] shall amend the 2015 taxes and file jointly with [Laiter]. Any refund or liability shall be shared equally by the parties. Any cost to prepare the taxes will be shared equally." Similar language is used in the court's February

2018 order. The June 2019 contempt order from which Lyubchenko now appeals provides that Laiter and Lyubchenko "shall each be entitled to any refund from the filing of their State return ([Laiter] files in Wisconsin and [Lyubchenko] files in Texas and New York)."

¶30 Lyubchenko notes that toward the end of the May 2019 de novo hearing, he raised the issue of the Wisconsin tax refund but the circuit court responded that it was not part of the de novo review and that no evidence was presented on the issue. Lyubchenko has not demonstrated that the court's determination was in error. Notably, the motion for contempt appears to have been based on Lyubchenko's failure to file or sign an amended joint federal return, not based on his failure to sign a Wisconsin return. Moreover, Lyubchenko's failure to file the federal return was the subject of the initial contempt proceeding and the de novo review.

¶31 Based on the foregoing, Lyubchenko has not shown that the circuit court erred in declining to address the Wisconsin return at the de novo hearing or that it erroneously exercised its discretion in determining that each party would be entitled to a tax refund from the state in which that party filed his or her own individual taxes.[5]

---

[5] Laiter also argues that the Wisconsin tax refund issue is moot because Lyubchenko actually received the Wisconsin refund, in that Laiter's refund was intercepted by the Wisconsin Department of Revenue (WDOR) to pay the Wisconsin Bureau of Child Support for child support that Lyubchenko owed Laiter. In support, Laiter attaches to her brief a letter addressed to her from the WDOR that shows that $327.47 of her tax refund was applied to a debt owing the Bureau of Child Support, and asks that this court take judicial notice of the WDOR letter under WIS. STAT. § 902.01(2). In light of my determination that Lyubchenko has not shown that the circuit court erred, I need not consider Laiter's mootness argument. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

### V. Tax preparation fee.

¶32    Lyubchenko argues that the circuit court erred in ordering him to pay for half of the accountant fees that Laiter incurred for Bacha's preparation of the parties' 2015 amended joint tax return. Lyubchenko's share for these fees was $618. Lyubchenko contends that the May 2018 divorce judgment "clearly and unambiguously" ordered Lyubchenko to amend his tax return and file jointly with Laiter and that "[i]t is therefore unclear why Laiter decided to proceed with preparing her own tax return without consulting Lyubchenko." He further argues that the record shows that he did not agree to Bacha's services for preparation of the 2015 return.

¶33    Notably, however, both the February 2018 order and the May 2018 divorce judgment state that "[a]ny cost to prepare the taxes will be shared equally." And neither order explicitly states that Lyubchenko himself was required to prepare the joint return. Rather, both orders state that Lyubchenko was required to "amend the 2015 taxes and file jointly with [Laiter]."

¶34    Additionally, Lyubchenko was first ordered to amend his 2015 tax return and file a joint return with Laiter in February of 2018. The record shows that when Laiter filed her contempt motion nearly a year later in January 2019, no joint return had been filed, nor had Lyubchenko signed the return that Bacha had prepared. Lyubchenko appears to argue that Laiter and Bacha failed to cooperate with him in preparing the amended return. However, as found by the circuit court and testified to by Bacha, Lyubchenko's proposed return had the refund going to Lyubchenko. The record shows that upon receiving Lyubchenko's draft of the joint return in June 2018, Laiter's attorney responded the following month that Laiter would not agree to a return where Lyubchenko receives the entire refund.

13

Also, as Bacha testified, the return that Lyubchenko prepared did not include a number of deductions that would have increased the parties' refund.

¶35    Accordingly, the circuit court found that it was "reasonable under the circumstances" and "based on the history of this case" for Laiter to have the tax return prepared by a professional accountant. Lyubchenko has not shown that the court's determination was in error or that the court erroneously exercised its discretion in requiring that Lyubchenko pay half of Bacha's accounting fees, particularly given that this was expressly ordered in the circuit court's February 2018 order and May 2018 divorce judgment.

### VI. Lyubchenko's argument that the circuit court "abused its discretion in imposing remedial sanctions on [him] when he was not in continuing contempt on an already moot issue."

¶36    Lyubchenko was first ordered to amend his 2015 tax return and file a joint return with Laiter in February 2018. As previously stated, at the time Laiter brought her contempt motion in January 2019 almost a year later, Lyubchenko still had not filed a joint return and had not signed the return that Laiter's accountant had prepared. However, shortly after Laiter filed her contempt motion, and prior to the March 2019 contempt hearing before the circuit court commissioner, Lyubchenko signed the amended return.

¶37    Lyubchenko argues that, because he signed the amended return before the contempt hearing, the circuit court erred in finding him in contempt. He states that failure to file the amended return was the basis for the contempt motion and that therefore signing the tax return prior to the hearing rendered the contempt issue moot at the time of hearing. *See **PRN Assocs. LLD v. DOA**, 2009 WI 53, ¶25, 317 Wis. 2d 656, 766 N.W.2d 559 ("An issue is moot when its resolution will have no practical effect on the underlying controversy."). In his

14

reply brief, Lyubchenko also argues that, in order for the court to impose a remedial sanction, there must be continuing contempt of court at the time the remedial sanction is considered. In support of this latter proposition, Lyubchenko's reply brief cites *Christensen v. Sullivan*, 2009 WI 87, ¶75, 320 Wis. 2d 76, 768 N.W.2d 798, and *Frisch v. Henrichs*, 2007 WI 102, ¶47, 304 Wis. 2d 1, 736 N.W.2d 85.

¶38    In *Christensen*, our supreme court determined that the circuit court lacked statutory authority to impose a remedial contempt sanction against Milwaukee County for its past violations of a consent decree provision where the County's contemptuous conduct was no longer "continuing" at the time a contempt motion was filed. *Christensen*, 320 Wis. 2d 76, ¶¶74-75.  In *Frisch*, the court held that, although one of the parties had "produce[d] all the required documents before the circuit court found him in contempt, his contempt was continuing under WIS. STAT. § 767.27(2m) because his production of documents came too late to undo the problems he had created by failing to produce the documents on time." *Frisch*, 304 Wis. 2d 1, ¶47.

¶39    It is a well-established rule of appellate practice that the court will not consider arguments raised for the first time in a reply brief, *Northwest Wholesale Lumber v. Anderson*, 191 Wis. 2d 278, 294 n.11, 528 N.W.2d 502 (Ct. App. 1995), because doing so "thwart[s] the purpose of a brief-in-chief, which is to raise the issues on appeal, and the purpose of a reply brief, which is to reply to arguments made in a respondent's brief." *Verex Assurance, Inc. v. AABREC, Inc.*, 148 Wis. 2d 730, 734 n.1, 436 N.W.2d 876 (Ct. App. 1989).  In challenging the circuit court's contempt order, Lyubchenko's brief-in-chief addresses the issue of mootness, not whether there was "continuing contempt" as discussed in

*Christensen* and *Frisch*. Thus, I need not consider Lyubchenko's legal arguments raised in his reply brief based on *Christenson* and *Frisch*.

¶40 Moreover, Lyubchenko did not raise either a mootness or a "continuing contempt" argument before the circuit court; therefore, both arguments are forfeited. *See Schill*, 327 Wis. 2d 572, ¶45 & n.21.

¶41 Even if I were to consider the merits, however, Lyubchenko's arguments would be unavailing because he has failed to show that the circuit court's resolution of the contempt issue would have "no practical effect," as required for application of the mootness doctrine, s*ee PRN Assocs.*, 317 Wis. 2d 656, ¶25, or that the contempt was not continuing under *Christensen* and *Frisch*. Here, it is undisputed that as a result of Lyubchenko's failure for nearly a year to comply with the circuit court's February 2018 order, Laiter incurred accountant fees for ultimately having Bacha prepare the parties' joint return; incurred attorney fees for bringing the contempt action which evidently prompted Lyubchenko's compliance with the February 2018 order; was denied her share of an anticipated tax refund from the filing of the amended return; and had not been reimbursed by Lyubchenko for the tax liability she incurred for having to file an individual tax return as a result of Lyubchenko's filing an individual return during the parties' marriage. There is likewise no dispute that these financial losses were outstanding at the time of the March 2019 contempt hearing before the court commissioner and that they were still outstanding at the time of the May 2019 de novo hearing. In finding Lyubchenko in contempt, the circuit court ordered that he reimburse Laiter for half of the accountant fees, for attorney fees, and for half of the amount in tax liability that Laiter incurred for having to file an individual tax return. The court also ensured that Laiter's half of the anticipated tax refund for the parties'

amended tax return would be paid to Laiter and that Lyubchenko's share of the refund would also be paid to Laiter to offset amounts he owed her.

¶42    Lyubchenko has failed to cite any authority in which a court has determined that a party may not be found in contempt where, at the time of the contempt motion, the party is in violation of a court order but then complies with the court order in time for the contempt hearing.  As repeated throughout this opinion, arguments unsupported by legal authority will not be considered, and this court will not abandon its neutrality to develop arguments on behalf of a party. *See **Industrial Risk Insurers***, 318 Wis. 2d 148, ¶25.

¶43    Lyubchenko also appears to challenge the circuit court's finding of contempt on the ground that he provided a proposed amended tax return to Laiter in June 2018, and that it was not his fault that no return was completed until January 2019.  As previously stated, a circuit court's findings of fact underlying a contempt determination will be upheld unless they are clearly erroneous. ***Krieman***, 214 Wis. 2d at 169.  Moreover, "[b]ecause the exercise of discretion is so essential to the [circuit] court's functioning, we generally look for reasons to sustain discretionary decisions."  ***Schneller v. St. Mary's Hosp. Med. Ctr.***, 155 Wis. 2d 365, 374, 455 N.W.2d 250 (Ct. App. 1990).

¶44    Here, the circuit court was presented with ample evidence that Lyubchenko did not reasonably comply with the circuit court's February 2018 order that he file an amended 2015 return.  Although Lyubchenko appears to have completed a proposed amended return on June 18, 2018, the circuit court heard testimony that Lyubchenko drafted the return so that the entire refund would go solely to him and that he failed to include deductions that would result in a larger refund.  The record also shows that in July 2018, Laiter's counsel informed

Lyubchenko's counsel that Laiter would not sign Lyubchenko's proposed amended return but would do so if he modified it to address these concerns. The record also includes an email dated October 18, 2018, in which Laiter's attorney asked Lyubchenko's attorney about the status of the amended return. On December 14, 2018, an amended return prepared by Bacha was sent to Lyubchenko's attorney with an email requesting that counsel have the amended return signed and returned to Laiter's counsel by December 28 and warning that if the return was not received by then, Laiter's counsel would file for contempt. On December 17, 2018, Laiter's counsel again emailed Lyubchenko's counsel asking him to "acknowledge receipt" and reiterating that if she did not have the return back by December 28, she would file for contempt. On December 18, 2018, Laiter's counsel once again emailed Lyubchenko's counsel, stating that it was the third time she had emailed him and again warning that if she did not receive the signed return by December 28, she would file for contempt. On January 3, 2019, Laiter filed her request for a contempt order.

¶45 As he argued before the circuit court, Lyubchenko argues on appeal that he received no update from his attorney on the status of the return after July 2018, that he was not informed by his attorney of the amended return prepared by Bacha and sent to his attorney on December 14, 2018, and that when he became aware of the return in early January 2019, he signed it shortly thereafter. However, as found by the circuit court:

> I think that Mr. Lyubchenko, through his lawyer, had several opportunities between June -- or May of 2018 and by the time this contempt was filed to have disputed, refuted, had negotiations; but instead it ends up with a contempt motion filed and two hearings to work it out -- or to have the Court finally decide how to work it out.
>
> I am going to grant Ms. Laiter's motion. I think that Mr. Lyubchenko's actions, either by him or through his

18

attorney, were not reasonable in conforming to the court order.

¶46    In sum, Lyubchenko has not established that the circuit court's findings were clearly erroneous or that the court's order finding him in contempt was in error.

### VII.  Attorney and accountant fees.

¶47    Lyubchenko challenges the amounts in attorney and accountant fees determined by the circuit court.   Regarding attorney fees, Lyubchenko argues that the amount of $1,500 incurred for the initial contempt hearing before the court commissioner was in error because it is inconsistent with the amount of attorney fees listed in an exhibit submitted by Laiter at the de novo hearing.  The exhibit states that Laiter incurred $1,200 in attorney fees for the initial contempt proceeding, but the circuit court ordered $1,500 in attorney fees for that proceeding.

¶48    However, the court commissioner who conducted the contempt proceeding found that Laiter "incurred $1,500 in reasonable attorney fees for having to bring this action."  This is set forth in the court commissioner's March 2019 order and was adopted by the circuit court following the court's de novo review.  Laiter acknowledges that the hearing exhibit states the amount as $1,200 but argues that the mistake is on the exhibit, not on the court commissioner's order.  She argues that there is no requirement that the circuit court ignore a previous court finding and instead use figures that are set forth on an exhibit.  I agree with Laiter.   The circuit court was clearly following the court commissioner's order in determining that the attorney fees incurred for bringing the action before the court commissioner were $1,500.  Lyubchenko has failed to

establish that this amount was clearly erroneous. *See **Herlitzke v. Herlitzke***, 102 Wis. 2d 490, 494, 307 N.W.2d 307 (Ct. App. 1981) ("When more than one reasonable inference can be drawn from the evidence, this court is obliged to support the findings made by the trial court.").

¶49 With respect to the accountant fees, Lyubchenko argues that the circuit court made an "error in computation" in awarding accountant fees for 3.5 hours of Bacha's time instead of for 3 hours. At the de novo hearing, the following exchange occurred between Bacha and the court:

> Q Did you incur additional fees for being here today?
>
> A I did.
>
> Q And what additional fees did you incur?
>
> A This morning I put in two and a half hours to get everything for today's appearance in order and my time here.
>
> THE COURT: So *about* three hours?
>
> THE WITNESS: Mm-hmm.
>
> THE COURT: Yes?
>
> THE WITNESS: Yes, your Honor.

(Emphasis added.)

¶50 Based on this exchange, Lyubchenko argues that the circuit court should have entered an order for 3 hours rather than 3.5 hours.[6] I conclude that

---

[6] As Laiter points out, even if Lyubchenko were correct that this was a "miscalculation," the error would result in Lyubchenko saving $37.50 (50% of ½ hour x $150/hour). Laiter argues that "[t]his is the quintessential example of the extent Mr. Lyubchenko will go to excessively litigate issues in this case."

Lyubchenko has not shown that the court's calculation was clearly erroneous. First, the court summarized Bacha's statement as *about* three hours, not *exactly* three hours. In addition, Bacha testified that her time consisted of 2.5 hours preparing for the hearing that morning and "my time here."[7] I note that Bacha's testimony about her hours and her "time here" occurred relatively early during the de novo hearing, at page 14 of the 54-page hearing transcript, and that following Bacha's testimony regarding her time, she was recalled as a witness, after both Laiter's and Lyubchenko's testimony.

¶51 Accordingly, Lyubchenko has not shown that the circuit court erroneously exercised its discretion in determining the amount for either attorney or accounting fees.

**CONCLUSION**

¶52 For the reasons stated above, I affirm all challenged aspects of the circuit court's June 2019 order finding Lyubchenko in contempt.[8]

---

[7] Lyubchenko's reply brief suggests that Lyubchenko has construed the 2.5 hours as *including* the time Bacha spent at the hearing. He asserts: "The record clearly shows that Bacha spent 2.5 hours in preparation for [the] hearing and the hearing itself. The court clearly didn't want to deal with fractions and rounded the number to 3." However, that interpretation is not supported by the exchange set forth above between the circuit court and Bacha.

[8] Laiter moves for costs and attorney fees against Lyubchenko under WIS. STAT. § 809.25(3)(c) because, according to Laiter, this appeal is frivolous. Attorney fees may be imposed under § 809.25(3)(c) only if the entire appeal is frivolous. *State ex rel. Robinson v. Town of Bristol*, 2003 WI App 97, ¶54, 264 Wis. 2d 318, 667 N.W.2d 14. Although I have decided against Lyubchenko on all of the issues he raises in this appeal and consider some of his arguments on appeal to be frivolous, I cannot conclude that all of his arguments are frivolous. Accordingly, I deny the motion. I further note that, relying on *Zhang v. Yu*, 2001 WI App 267, 248 Wis. 2d 913, 637 N.W.2d 754, Laiter argues that this court may order costs and attorney fees based on a subset of frivolous arguments. However, I reject this argument because *Zhang* affirmed a circuit court determination of attorney fees in the context of "overtrial"; it did not

(continued)

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

determine that this court may award attorney fees under § 809.25(3)(c) based on a subset of frivolous arguments. *See Zhang*, 248 Wis. 2d 913, ¶¶9-10, 16.