COURT OF APPEALS
DECISION
DATED AND FILED

December 28, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP776**

Cir. Ct. No. **2013FA385**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

IN RE THE FINDING OF CONTEMPT IN
IN RE THE MARRIAGE OF:

KIM C. GRONEWOLD,

  PETITIONER-RESPONDENT,

 V.

JAN GRONEWOLD,

  RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Outagamie County: MITCHELL J. METROPULOS, Judge. *Affirmed.*

¶1    GILL, J.[1] Jan Gronewold[2] appeals from an order finding him in contempt of court for failing to pay court-ordered maintenance to his ex-wife, Kim Gronewold.  Jan argues that the circuit court erred by finding him in contempt because: (1) all of his arrears had been paid "in full" at the time of the contempt hearings; and (2) his failure to make the ordered payments was not willful or intentional.  Jan also argues that a finding of contempt should not have been made because the affidavit supplied by Kim contained inaccurate information, the court refused to allow Jan to question Kim, and the court improperly ordered a contempt sanction.  We reject Jan's arguments and affirm the order.

## BACKGROUND

¶2    Jan and Kim were married in December 1987.  The parties divorced after nearly twenty-six years of marriage.  At the time of the divorce, Jan's financial disclosure statement (hereinafter "FDS") reflected that he was employed in sales with a base monthly income of $5,788.47 and the possibility of earning additional monthly commissions up to $2,500.  Kim was employed as a teacher's assistant with a monthly income of $1,691.

¶3    As part of the final divorce proceeding, the parties entered into a stipulation providing that effective November 13, 2013, Jan would pay maintenance to Kim in the amount of $1,200 monthly.  Maintenance would continue at that level through the month during which the closing on the sale of the parties' residence occurred.  Jan would thereafter pay monthly maintenance of

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] Because the parties share a surname, we refer to them individually by their first names.

$2,100. Of that amount, $1,700 was to be paid by income assignment. In addition, Jan would make quarterly payments to Kim in the amount of $1,200 on January 15, April 15, July 15, and October 15 of each year. The parties further agreed that an increase or decrease in Jan's income of twenty-five percent from the then-present level of $94,000 per year would be considered a substantial change in circumstances allowing the circuit court to review the amount of maintenance payable by Jan.

¶4    In February 2014, Jan and Kim stipulated to a modification of maintenance. At that time, Kim's gross monthly income was $1,902 for each of the nine months of the school year. Jan's gross monthly income was $7,833.33, which included his base pay plus estimated commissions. Pursuant to the parties' stipulation, maintenance was modified from $1,700 per month plus $1,200 paid quarterly to $1,800 per month with no quarterly payments.

¶5    In May 2019, Jan filed a motion to modify maintenance, alleging that he had been laid off from his job. He asked that his maintenance obligation be set at zero dollars per month starting April 23, 2019, until he was reemployed. The court commissioner held open the issue for more information. Jan's FDS showed he had monthly unemployment income of $1,591. Kim's FDS showed monthly gross income—which did not include maintenance—of $1,811.56.

¶6    In July 2019, Jan filed a motion to modify maintenance from $1,800 per month to $1,200 per month. Thereafter, on July 29, 2019, the parties entered into a stipulation regarding maintenance. Based on Jan's unemployment beginning in April 2019, the parties agreed that Jan would be "releas[ed] … of three (3) months of maintenance pay." The stipulation recognized, however, that Jan had since secured employment as a sales agent earning a monthly income of at

least $5,000. Based on that income, the parties stipulated to a temporary sliding scale maintenance obligation for the period of August 1, 2019, through July 31, 2020. Jan's maintenance payments would range from $1,300 to $1,800 per month if his monthly income was between $5,000 and $7,833 or higher. Jan's maintenance obligation would be renegotiated if his gross monthly income was less than $5,000. After July 31, 2020, maintenance would revert to the previously stipulated amount of $1,800 per month. An August 6, 2019 order approved the stipulation.

¶7 On June 23, 2020, the parties entered into another stipulation, as Jan was again unemployed. The parties agreed that Jan's maintenance obligation would be waived beginning June 1, 2020, through September 30, 2020. The stipulation also provided that Jan's maintenance payments would automatically resume at the previously stipulated monthly amount of $1,800 effective October 1, 2020, or upon Jan's reemployment, whichever occurred first. The circuit court approved the parties' stipulation in an order dated June 24, 2020. Jan subsequently represented to the court in October 2020 that he had secured self-employment as a subcontractor making approximately $6,000 per month, effective September 1, 2020. Nonetheless, Jan failed to pay any maintenance to Kim from September 2020 to March 2021.

¶8 A contempt hearing before the court commissioner was held on March 15, 2021, at which time Jan made a maintenance payment of $7,870.56. When the court commissioner found Jan in contempt for failing to pay the court-ordered amount, Jan stopped that maintenance payment. Jan thereafter filed a motion for a de novo hearing. As of April 1, which was two weeks after the March hearing, Jan had an arrears balance of $9,670.56, as well as a current support balance of $1,800, for a total due to Kim of $11,470.56. At the April 2021

de novo hearing, the circuit court noted that Jan's outstanding balance was zero. The court further noted, however, that at the time of the March 15 hearing, Jan did have outstanding arrears. Therefore, the court found that the court commissioner's order was not in error[3] and affirmed the ruling.[4] Jan now appeals.

## DISCUSSION

¶9 A circuit court may hold a person in contempt as a remedial sanction if he or she refuses to comply with an order of a competent court. WIS. STAT. §§ 785.01(3), 785.03(1)(a); *State v. Rose*, 171 Wis. 2d 617, 622, 492 N.W.2d 350 (Ct. App. 1992). Before a circuit court may impose a contempt sanction for a failure to pay support obligations, however, the court must find that the person is able to pay and that any refusal to pay is willful and with intent to avoid payment. *Benn v. Benn*, 230 Wis. 2d 301, 310, 602 N.W.2d 65 (Ct. App. 1999). After a complainant has made a prima facie showing that an order has been violated, the alleged contemnor bears the burden of demonstrating that his or her conduct was not contemptuous. *Noack v. Noack*, 149 Wis. 2d 567, 575, 439 N.W.2d 600 (Ct. App. 1989). In addition, when remedial contempt is imposed, a court also must allow for the contempt sanction to be "purgeable" through either compliance with the contempt order or completion of alternate conditions.

---

[3] Although the comment of the circuit court finding that the court commissioner's order was not in error suggested that the court was engaging in an appellate type of review, it is clear that at the hearing, the court identified the hearing as a de novo hearing, the court heard arguments, reviewed documents and reached a conclusion that would be consistent with a de novo review. From a procedural standpoint, this conduct would not amount to an erroneous exercise of discretion.

[4] The finding of contempt was based upon the failure to pay during the specific time period. The fact that a late payment brought Jan current did not alter that fact.

*Dianne K.J. v. James L.J.*, 196 Wis. 2d 964, 969, 539 N.W.2d 703 (Ct. App. 1995).

¶10 We review a circuit court's use of its contempt power for an erroneous exercise of discretion. *Krieman v. Goldberg*, 214 Wis. 2d 163, 169, 571 N.W.2d 425 (Ct. App. 1997). A court has properly exercised its discretion when it has logically interpreted the facts, applied a proper legal standard, and reached a reasonable conclusion using a demonstrated rational process. *Benn*, 230 Wis. 2d at 308. If a court fails to explain its reasoning in exercising its discretion, we independently review the record to determine whether it supports the court's decision. *See Randall v. Randall*, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737. Whether a person has committed a contempt of court, including the person's ability to pay and the existence of any willfulness or intent to avoid payment, is a question of fact. *Rose*, 171 Wis. 2d at 623. We will not overturn a circuit court's factual finding that a person has committed a contempt of court unless that finding is clearly erroneous. *See id.*

¶11 Jan argues that the circuit court erred by finding him in contempt for failure to pay maintenance. Although his arguments are convoluted, Jan appears to argue that the contempt finding was inappropriate because: (1) the arrears had been paid by the time of the hearing before the court; (2) the affidavit in support of the motion for contempt was based upon perjury; and (3) the court ignored facts submitted by Jan.

¶12 We conclude the circuit court did not err by finding Jan in contempt for failure to pay maintenance. The record on appeal supports a finding that Jan returned to employment on September 1, 2020, earning approximately $6,000 per month. It is evident that Jan had the ability to pay maintenance, during the time

period of September 2020 through March 2021, but chose not to do so. Further, immediately prior to the contempt hearing before the circuit court on April 14, 2021, Kim's counsel filed the payment records representing Jan's maintenance payments. Those records confirm that on March 15, 2021, Jan paid $7,870.56 in maintenance arrears, which was offered as evidence that he was not in contempt. When the court commissioner still made a contempt finding, Jan immediately stopped payment. This money was then returned to Jan, and no further payments were made until April 5, 2021, when Jan tendered $9,000.

¶13    Jan does not dispute the fact that during much of the relevant time period, he had not made the court-ordered maintenance payments. While in his motion he argued that he did not make payment because of his financial downfall, the circuit court accurately recognized, he made a $7,000 payment just before the hearing before the court commissioner. Likewise, he was employed making $6,000 per month between the relevant time period of September 2020 and March 2021, yet he failed to make any payments during that period. The fact that Jan made a payment on April 5, 2021, does not alter the fact that he failed to make payments during the intervening time period without justification. The court did not err by concluding that Jan had the ability to pay maintenance and that his nonpayment was intentional.

¶14    Regarding Jan's allegation of perjury, Jan asserts that a finding of contempt should not have been made whereas, an affidavit that was supplied by Kim contained inaccurate information. In particular, Jan complains that the affidavit in support of contempt incorrectly stated that he earned $11,000 per month. We reject this argument as underdeveloped. Although Kim stated that Jan earned an average of almost $11,000 per month from September through December 2020, Jan makes no argument as to how this information was

considered by the circuit court to his detriment. The record fails to show that the court relied on the allegedly inaccurate information. We therefore decline to address Jan's perjury argument because it is underdeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). The same flaw exists with respect to Jan's complaint regarding the court's refusal to allow him to question Kim. Jan fails to show what evidence he would have elicited had he been able to cross-examine Kim and how it would have been relevant to the contempt finding.

¶15 Having concluded that the circuit court did not err in finding Jan in contempt, we now turn to his final argument that the court erred by ordering him to pay $956 as a contempt sanction to Kim for attorney's fees she incurred in bringing the contempt motion. Jan fails to develop an argument in this regard and there is nothing to suggest that the court erred in making this order. The court found that Jan was in contempt for his failure to pay maintenance during the time period of September 2020 through March 2021. As explained above, Jan had the ability to pay, and his refusal to do so was willful. It was thus appropriate for the court to impose a contempt sanction that was directly tied to the amount of time expended by Kim's attorney to pursue the meritorious motion for contempt. *See Town of Seymour v. City of Eau Claire*, 112 Wis. 2d 313, 320, 332 N.W.2d 821 (Ct. App. 1983) (recognizing attorney's fees are recoverable as damages for contempt). Accordingly, we affirm the order.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

8